Richard W. PARKINSON, Robert D. MacKenzie and Jerome W. Hull, Plaintiffs,

v.

PHONEX CORPORATION, a Utah corporation, Randall J. Mansfield, John M. Simonson, A.R. "Rod" Mansfield, Nicholas A. Smith, William L. Fillmore, Ronald L. Spence, Robert Ranmsdell, and John Does, I through X, Defendants.

No. 91–C–0021–S.

United States District Court, D. Utah, Central Division.

July 5, 1994.

Evan A. Schmutz, Hill, Harrison & Hill, Provo, UT, for plaintiffs.

Brian C. Johnson, Brent O. Hatch, Johnson & Hatch, Salt Lake City, UT, for defendants.

## MEMORANDUM DECISION

SAM, District Judge.

Pursuant to a 28 U.S.C. § 636(b)(1)(A) reference, the magistrate judge previously heard argument and considered briefing relative to defendants' motion to disqualify counsel for plaintiff. By order entered March 3, 1994, defendants' motion was denied. The matter is now before this court on defendants' motion for district court reconsideration of the magistrate judge's Memorandum and Order. The magistrate's decision will be reviewed under the "clearly erroneous or contrary to law standard" enunciated in 28 U.S.C. § 636(b)(1)(A).

### I. Factual Summary

The original complaint in this matter was filed January 7, 1991 prior to Mr. Schmutz' present affiliation with the firm of Hill, Harrison and Hill ("HH & H"). Since the inception of the litigation, Mr. Schmutz has been lead and, during much of the time, sole counsel for the plaintiffs. Mr. Schmutz joined HH & H in August, 1993 and continued representation of the plaintiffs in the present litigation.

John M. Simonson was a defendant in the instant action. On November 4, 1993, Si-

monson met with attorney F. McKay Johnson at the office of Simonson's financial advisor. Johnson is a member of HH & H. Johnson subsequently undertook representation of Simonson in the capacity of an estate and tax planning advisor. The representation lasted approximately one month. At no time during Simonson's meetings with Johnson did Simonson mention the present litigation or otherwise discuss its affect on his stock holdings in Phonex Corporation.[1] Although Johnson asked an assistant to prepare a conflicts check for circulation among firm members, no such check was circulated. It was not until December 29, 1993 that Johnson became aware of the Phonex litigation and the resulting problem with the Simonson estate planning representation. Johnson immediately sent a formal termination notice. Pursuant to the parties' agreement Simonson was also dropped as a defendant from the litigation as a result of the apparent conflict situation.

Defendants speculate that Schmutz and Johnson may have communicated regarding information obtained by Johnson during his representation of Simonson. However, the evidence indicates that neither attorney was aware of the other's relationship with Simonson prior to December 29, 1993 and that no sharing of documents or other privileged information occurred after the conflict was discovered.

## II. Legal Analysis

The magistrate judge placed the present issue in the appropriate procedural context when he cited D.Ut. 103–1(h) which provides that all attorneys practicing before this court are "governed by and shall comply with the rules of practice adopted by this court and, unless otherwise provided, with the Utah Rules of Professional Conduct, as revised and amended; with the ABA Model Rules of Professional Conduct; and with the decisions of this court interpreting those rules and standards." Rule 1.7(c) Utah Rules of Professional Conduct provides that "[a] lawyer shall not simultaneously represent the interests of adverse parties in separate matters, unless: (1) The lawyer reasonably believes the representation of each will not be adversely affected; and (2) Each client consents after consultation." Rule 1.10(a) provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7...."

There is no dispute that during the period from November 4, 1993 through at least December 6, 1993 and possibly January 4, 1994 members of HH & H simultaneously represented the interests of adverse parties in separate matters in violation of Rule 1.7(c) and Rule 1.10.[2] In this regard, the court finds that to the extent the magistrate judge relied exclusively on a former client analysis under Rule 1.9, his findings were clearly erroneous or contrary to law and the court will therefore reconsider the motion to disqualify under the standard applicable to Rule 1.7.[3]

In determining the appropriate course of conduct to follow after a violation of the Rules of Professional Conduct is found, this court is guided by the Rules, the Comment to the Rules and, as provided in D.Ut. 103–1(h), by the decisions of this court interpreting those rules and standards.

To this end, the court considers *Bodily v. Intermountain Health Care Corp.*, 649 F.Supp. 468 (D.Utah 1986) informative and persuasive. *Bodily* involved analysis of the

---

1. The court has reviewed all testimony regarding the substance of Johnson's and Simonson's conversations during the period of representation, including deposition excerpts, the sealed affidavit of Simonson and the Johnson and Smith affidavits.

2. The court has not seen any evidence that the simultaneous representation occurred "knowingly". Schmutz and Johnson's conduct may therefore not be in violation of Rule 1.10.

3. However, the court believes from its review of the magistrate judge's Memorandum and Order that the magistrate judge did not rely exclusively on Rule 1.9 to reach his conclusion. There was appropriate discussion of Rule 1.7, Rule 1.10 and other relevant guidelines. In addition, discussion and application of Rule 1.9 is not without its place with respect to this matter given the rather unique circumstance of Simonson being dismissed as both a client and a defendant in the litigation.

Code of Professional Responsibility and the disciplinary rules promulgated thereunder. Its discussion of the substantive considerations surrounding a violation of the rule against simultaneous representation of multiple clients with adverse interests is worthy of repetition.

Under the Second Circuit view, the fact that the conduct in question has been found to constitute a violation of the Code of Professional Responsibility does not require disqualification of counsel as a matter of course. In *Matter of Bohack Corp.*, 607 F.2d 258, 263 (2d Cir.1979), it was noted that

> courts have indicated great reluctance to "separate a client from his chosen attorney where the alleged misconduct does not prejudice an opposing party and taint the litigation in which he is appearing."

More recently, in *Bottaro v. Hatton Assoc.*, 680 F.2d 895, 896–97 (2d Cir.1982), the court adopted "a restrained approach,"

> which calls for disqualification only upon a finding that the presence of a particular counsel will taint the trial by affecting his or her presentation of a case. *Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979); [*Armstrong*] v. *McAlpin*, 625 F.2d [433] at 444–446. [2nd Cir.1980]. We have conceded that this test will not "correct all possible ethical conflicts," *McAlpin*, 625 F.2d at 445, but have also noted that this laudable goal cannot be attained through rulings in the course of litigation without inviting the wholesale filing of motions for tactical reasons. The result would be needless disruption and delay of litigation, thereby impairing the efficient administration of justice. *See id.* at 438, 446. Where a threat of tainting the trial does not exist, therefore the litigation should proceed, the remedy for unethical conduct lying in the disciplinary machinery of the state and federal bar. *Id.*

The sanction of disqualification of counsel in litigation situations should be measured by the facts of each particular case as they bear upon the impact of counsel's conduct upon the trial. The egregiousness of the violation, the presence or absence of prejudice to the other side, and whether and to what extent there has been a diminution of effectiveness of counsel are important considerations. In addition, equitable considerations such as the hardship to the other side and the stage of trial proceedings are relevant. The essential issue to be determined in the context of litigation is whether the alleged misconduct taints the lawsuit. For instance, in *Beck v. Board of Regents of State of Kan.*, 568 F.Supp. 1107 (D.C.Kan.1983) the court withheld its "inherent power" to disqualify stating that:

> The court should not act unless "the offending attorney's conduct threatens to 'taint the underlying trial' with a serious ethical violation." [citation omitted]. Whether or not the underlying trial may become tainted must be addressed in each case based on its own specific facts.

[citations omitted].

*Id.* at 477–478. *Bodily's* finding of no per se rule of disqualification in simultaneous representation situations was, at a minimum, acknowledged without consent in *Picker International, Inc. v. Varian Associates, Inc.*, 869 F.2d 578, 581 (Fed.Cir.1989).

Although the Tenth Circuit has not directly addressed application of a per se rule of disqualification in simultaneous or concurrent representation situations, *EEOC v. Gygi Co. Inc.*, 749 F.2d 620 (10th Cir.1984) confirms that handling of such matters and a determination of the facts involved in a particular case is a matter within the trial judge's discretion. "Ordinarily the control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge, and his performance in this area is a matter of judicial discretion." *Id.* at 621 (citations omitted). In *EEOC*, one attorney was found to have been representing an employee in an annulment matter during the same period as his representation of a defendant employer in a Title VII sex discrimination suit in which the same employee was an interested party. The district court disqualified the attorney from representation of Orson Gygi Co. even though his representation of the employee has ceased prior to the motion to disqualify

being filed. The court found the attorney's exercise of his independent professional judgment likely to be adversely affected as a result of the concurrent representation.

The court's application of the ethical standards to the conduct in question in *EEOC* did not involve a per se rule of disqualification. Rather, the approach taken by the district court and the Tenth Circuit confirmed *Bodily's* guidance to analyze "the facts of each particular case as they bear upon the impact of counsel's conduct upon the trial." *Bodily,* 649 F.Supp. at 478.[4] The court has reviewed other cases submitted by defendants in support of their claim of a per se rule of disqualification and cannot agree that either the ethical rules or the common law dictate application of such a rule. *See e.g., Unified Sewerage Agency of Washington County, Oregon v. Jelco, Inc.,* 646 F.2d 1339 (9th Cir.1981) (district court has discretion to determine motions to disqualify and responsibility for controlling conduct of lawyers practicing before it; determination includes consideration of consent, nature of litigation/representation, type of information to which the lawyer may have had access, etc.); *International Business Machines Corp. v. Levin,* 579 F.2d 271 (3rd Cir.1978) ("If *facts* found by district court establish that practitioners before it have acted in a way which disqualifies them under its rules and established standards of professional conduct, it would ordinarily be error for court to fail to declare disqualification." Confirms acceptance of approach which allows court to consider facts and circumstances of each case rather than adopt per se rule.).

■ Having analyzed the facts and circumstances of this case and weighed the relatively minor harm alleged by Simonson and other defendants which has or may yet result from the one month estate planning representation against the over three years of litigation during which plaintiffs have been represented by Schmutz, this court cannot justify disqualification of Schmutz or HH & H. This court is not convinced that any confidential information was passed on to Johnson during his estate planning conferences with Simonson that relates to this litigation that was not readily discoverable through other means. In addition, it is not apparent to this court that any confidential or privileged information was shared by Johnson with Schmutz once the conflict became known. Furthermore, this situation simply does not involve the type of egregious conduct generally associated with the harsh sanction of disqualification. The magistrate judge's findings in this regard were correct in every material respect and this court adopts them.

Accordingly, the court concludes that, in the context of this litigation, the violation of the ethical rules in question did not taint the lawsuit nor diminish counsels' effectiveness. In addition, the court finds the interests of

---

**4.** It is significant to note that the instant situation varies from that in *EEOC*. Access to any confidential information passed on by the employee to the attorney in *EEOC* during the annulment representation and potential use of it during the Title VII action is presumed since only one attorney was involved. In contrast, the simultaneous representation in this matter involved two separate attorneys with totally separate practices. By affidavit it is confirmed that no sharing of confidential information occurred nor was it likely that any inadvertent sharing of information transpired given the distinct nature of the attorneys' practice areas. The Comment to Rule 1.10 acknowledges that it is appropriate to consider the reality of access to information in determining questions of disqualification.

> Access to information, ... is essentially a question of fact in particular circumstances, aided by inferences, deductions or working presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients. *In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussion of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not those of other clients.*

Comment to Rule 1.10 (emphasis added). It appears from the evidence presented to the court that Schmutz is a litigation attorney who handles his own affairs while Johnson is an estate planning practitioner whose practice is isolated from any litigation practice of Schmutz or the other HH & H attorneys. Thus this court believes it proper to infer that Schmutz was not privy to information about Johnson's clients.

the parties and the legal profession and the intent of the Rules of Professional Conduct to be best served by denying defendants' motion to disqualify. Any stay put in place pending resolution of the motion to disqualify is lifted and defendants are advised to promptly comply with all outstanding discovery requests so as not to delay the matter any further. The parties are hereby advised to appear before the court on July 21, 1994 at 8:00 a.m. for a Status Report and Scheduling Conference.

So Ordered.

## MEMORANDUM AND ORDER

March 3, 1994.

BOYCE, United States Magistrate Judge.

Defendants, Phonex Corporation, et al., have moved the court to disqualify the law firm of Hill, Harrison and Hill (HH & H), the attorneys for the plaintiffs, from representing the plaintiffs because HH & H represented John M. Simonsen, who *was* a defendant at the time of the motion (File Entry 70). The trial in this case was set for February 22, 1994 at 9:30 a.m. and the defendants have requested a continuation[1] of the trial date and a stay of discovery as well (Id.). Subsequent to the defendants' motion plaintiff's moved to dismiss John M. Simonsen as a defendant (File Entry 73). The motion was granted and Simonsen has been dismissed from this litigation as a party defendant. Therefore, the issue is whether when plaintiffs' law firm at one time represented both plaintiffs and a former defendant, must that firm step aside from any further participation in the cases.

The representation of John M. Simonsen by HH & H was through F. McKay Johnson a new member of the HH & H firm who undertook to represent Simonsen for estate planning and related matters. Much of the substance of defendants' memoranda in support of the motion is not directly in point in view of the fact that Simonsen is no longer involved in the suit. The defendants seem to contend that once having undertaken representation with a conflict of interest there is a *per se* disqualification that requires plaintiff's counsel to step aside. The defendants' counsel at hearing on the motion asserted a "per se" rule of disqualification. This position is also stated in the defendants' supplemental memorandum. The defendants also urge disqualification on the grounds that a significant part of Simonsen's estate planning concerns the treatment of shares in Phonex Corporation, one of the defendants in this action. Defendants contend HH & H has become privy to detailed and confidential information relating to Phonex Corporation's operations, finances and matters relating to trial strategy. If information was acquired by attorney Johnson, from Simonsen, which was otherwise privileged or not subject to discovery, and relevant to the other defendants, the circumstance would be of major significance on the motion to disqualify. Apparently, Simonsen was not informed by HH & H of the conflict and Simonsen did not know of it until later. However, if information about Phonex and others was not acquired through Johnson and Simonsen, or would otherwise have been discoverable, absent some particular prejudice, the conflict may not be significant and since Simonsen is no longer a defendant, may not be a basis for disqualification of HH & H.

An affidavit of F. McKay Johnson, Esq. has been submitted. He is a shareholder in HH & H with a practice limited to business and estate planning and federal taxation. Evan A. Schmutz joined the HH & H firm August 3, 1993 and represents the plaintiffs. Johnson first met with John M. Simonsen on November 4, 1993 at the office of Simonsen's financial adviser. Simonsen did not mention the litigation involving Phonex Corporation and himself. He said nothing about HH & H. Johnson asked an assistant to prepare a conflicts check for circulation among the other firm attorneys. Prior to December 29, 1993, Johnson was unaware Simonsen or Phonex were involved in any litigation and on that date Johnson discovered the conflict. The conflicts check Johnson had earlier requested had not been circulated. At no time prior to December 29, 1993 did Johnson discuss Simonsen or Phonex Corporation with

---

1. The trial of the case has been continued.

Evan Schmutz or other persons from HH & H or anything connected with those matters. According to Johnson no sharing of documents has occurred and since becoming aware of the conflict, Johnson has only discussed with HH & H the nature and extent of his work for Simonsen. On January 4, 1994, Johnson wrote to Simonsen terminating the lawyer client relationship as of that date.

The meetings between Johnson and Simonsen were to discuss estate planning strategies and to avoid probate and taxes. Other contacts involved estate planning matters which were discussed and some planning activities undertaken. On December 6, 1993 Simonsen advised Johnson that Simonsen wanted to fund one of his enterprises with stock from Phonex. Simonsen advised he held 2.573% of the stock of Phonex. Simonsen made an estimate of the near future projected worth of Phonex stock but the financial condition or financial history of Phonex Corporation was not discussed. A recommendation was made by Johnson to Simonsen as to how to obtain a valuation and appraisal of the Phonex stock from an outside source. Simonsen provided Johnson with Phonex unaudited financial statements for the year ending 12/31/92, unaudited financial statements for 12/31/91 and 12/31/90, and the tax returns for 1989, 1990, 1991 and 1992,[2] all to be given to a CPA firm. Johnson has not had any further contact with Simonsen since December 6, 1993. Thus HH & H does not represent Simonsen nor is he a party defendant in this suit.

Evan A. Schmutz, attorney for plaintiffs, has also submitted an affidavit. The original complaint in this matter was filed on January 7, 1991. Much of Schmutz' affidavit is irrelevant, simply setting forth the great difficulty he has had in obtaining depositions of some defendants.[3] Schmutz apparently first found out on December 29, 1993 that Johnson had represented Simonsen for estate planning purposes. After confirming that fact, Schmutz had a conversation with defendants' counsel, Brent O. Hatch, Esq., in which Hatch suggested that the dismissal of Simonsen from the lawsuit would resolve the conflict. Schmutz agreed to do so. That has occurred.

Following hearing on the defendants' motion to dismiss, the defendants submitted the affidavit John M. Simonsen for in-camera inspection by the court to determine what if any prejudice to defendants had occurred from HH & H's simultaneous representation of plaintiffs and former defendant Simonsen. The affidavit of Simonsen was obviously drafted by counsel. It was apparently prepared prior to the time Simonsen was dismissed from the suit and therefore, contains some material which is extraneous to the exact issue now before the court. The only issue is whether the affidavit shows that information was communicated by Simonsen to attorney Johnson that could not have been obtained by discovery and was either work product or a privileged communication. The information conveyed to Johnson by Simonsen does not involve matter that was otherwise not discoverable. The effort to place the information in the context of trial strategy is not supported in the affidavit or any memorandum. There does not appear to be any invasion of attorney work product or the defendants' attorney's thought process. Indeed the communication was of matter appropriate for estate planning and factually peripheral to the main issues in this suit. It was information that would have been discoverable in a deposition of Simonsen or other defendants and informed persons.

D. Utah Rule 103–1(h) requires attorneys practicing before this court to comply with the "Utah Rules of Professional Conduct, as revised and amended and *interpreted* by this court." (Emphasis added). See *SLC Limited v. Bradford Group West,* 999 F.2d 464, 466 (10th Cir.1993). When the defendants' motion was filed the plaintiffs' law firm had been in effect engaging in simultaneous representation of defendant Simonsen and suing him at the same time. Rule 1.7(c) Utah Rules of Professional Conduct (URPC) provides that a lawyer shall not "simultaneously

---

**2.** These matters would appear to be discoverable under Rule 26, F.R.C.P. They are not privileged under Rule 501, F.R.E.

**3.** Mr. Schmutz knows how to obtain depositions of unwilling or reluctant parties, if necessary.

represent the interests of adverse parties in the same matters unless (1) the lawyer reasonably believes the representation of each will not be adversely affected *and* (2) each client consents." (Emphasis added). Clearly Rule 1.7(c) does not create a *per se* prohibition against simultaneous representation or a per se rule requiring disqualification. The comments to the rule under "conflicts in litigation" state:

> *Ordinarily,* a lawyer may not act as advocate against the client the lawyer represents in some other matter, even if the other matter is wholly unrelated. *However,* there are circumstances in which a lawyer *may act* as an advocate against a client. (Emphasis added).

The rule obviously does not require a per se disqualification. "The propriety of concurrent representation can depend on the nature of the litigation." (Id.). However, in this case, plaintiffs' attorneys now, neither represent Simonsen or are suing him adversely in any litigation.[4]

Rule 1.9 U.R.P.C. treats the position of a former client which is the status of Simonsen. That rule prohibits representation of another person (plaintiffs) "in the same or a substantially factually related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents ..." Simonsen has not consented, and the suit against Phonex and the other defendants could be adverse to Simonsen's interests in Phonex even though he is not a defendant an adverse judgment could effect the worth of Simonsen's asset. The Comment to Rule 1.9 states that the scope of the matter "for purposes of Rule 1.9(a) may depend on the facts of the particu-

lar situations or transaction." There is no evidence HH & H were "directly involved in the specific transaction" which is the subject of this suit. Rule 1.9(b) prohibits use of information acquired during the representation except as Rule 1.6 would permit (not applicable) or the information has become "generally known." Johnson has made no communication of information, except as to that stated in his affidavit, nor has he received any information from Simonsen that would not be generally known or easily acquired. Johnson must maintain the confidentiality communications from his client. Defendants have not carried their burden of showing Rule 1.9(b) would provide a basis for disqualification of HH & H.

The burden of disqualification is on the defendants. *City Consumer Services, Inc. v. Horne,* 571 F.Supp. 965 (D. Utah 1983). The question of disqualification is one of federal law. *In re Dresser Industries, Inc.,* 972 F.2d 540 (5th Cir.1992).[5] The legal standard applicable is the law of the Tenth Circuit or this district.

It should be observed that federal courts have treated a motion for disqualification as one that should only rarely be granted. *Koller By and Through Koller v. Richardson–Merrell, Inc.,* 737 F.2d 1038 (D.C.Cir.1984). A motion to disqualify is to be viewed with extreme caution, but recognizing the possible unfair advantage that may result depending on the circumstances. *Id. Laker Airways Ltd. v. Pan American World Airways,* 103 F.R.D. 22 (D.D.C.1984). See also *Margulies,* supra. There is no broad rule of disqualification of counsel and a motion for such relief can itself be harassment and involve vexa-

---

4. Rule 1.10 U.R.P.C. provides lawyers associated in a firm ... "shall not knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7 ..." In this case Johnson did not "knowingly" represent Simonsen when he was being sued by HH & H. When Johnson found out he timely ceased any representation of Simonsen. However, as will be discussed later, Johnson has made a modest appearance in this case as counsel for plaintiffs. This raises a question about his continued participation in this case.

5. Decisions from the Utah appellate courts may be of help in considering the meaning of the

URPC and aiding this court's interpretation. However, they are not controlling. Defendants in their memorandum rely on *Margulies By Margulies v. Upchurch,* 696 P.2d 1195 (Utah 1985). However, that case involved a situation where there was continued simultaneous adverse representation, a situation not now present in this case. Further, Simonsen was dismissed from this action altogether, not merely dropped as an HH & H client. Different provisions of professional responsibility were involved. Finally a different legal standard was applied than that applicable in this Circuit. Although *Margulies* is of help, it is not controlling or fully persuasive in this case.

tious factors. *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564 (7th Cir. 1984).

In *Picker Int. v. Varian Associates, Inc.*, 869 F.2d 578 (Fed.Cir.1989) the Court of Appeals for the Federal Circuit upheld an order of this court (Sam J.) disqualifying counsel for plaintiff Picker in patent suits. Two law firms had merged, one of which had a long standing relation with plaintiff and one with defendant. Defendant was at the time being represented by one of the firms and plaintiff by the other firm in pending patent litigation in Ohio. Defendant rejected simultaneous representation. The relevant ethical provisions were not those in the current URPC. The court referred to the Tenth Circuit standard noting the district court would be upheld, except for an abuse of discretion. *Id.* at p. 581; citing *Equal Employment Opportunity Commission v. Orson H. Gygi Co.*, 749 F.2d 620, 621 (10th Cir. 1984).[6] The court noted a violation of then applicable ethical standard DR5–05 but said there was "no per se rule of disqualification" relying on Judge Greene's opinion in this district in *Bodily v. Intermountain Health Care Corp.*, 649 F.Supp. 468, 477 (D. Utah 1986). The Federal Circuit found simultaneous representation would be inappropriate. The court noted defendant's objection to simultaneous representation. Further, there was no proper withdrawal of counsel and the active nature of the litigation in both instances was patent infringement. The case is not directly related to the status and facts of this case, but it presented a more direct and obvious basis for disqualification. This case does not, at this juncture, involve simultaneous representation. The actual substantive standard applicable to the motion for disqualification in this circuit was not addressed. See also *EEOC v. Orson H. Gygi Co.*, supra. The cases would certainly suggest that under former DR5–105 simultaneous representation absent consent was improper and disqualification appropriate. The same is true under URPC 1.7.

In *Smith v. Whatcott*, 757 F.2d 1098, 1100 (10th Cir.1985) the court adopted a "substantially related" issues standard for disqualification. A disqualification was upheld (imposed by J. Jenkins of this district) where defendant's attorney had represented plaintiff in a prior criminal action which was substantially related to plaintiff's civil action against defendants. The Court of Appeals stated the standard:

> The merits of this disqualification motion depend on whether a substantial relationship exists between the pending suit and the matter in which the challenged attorney previously represented the client.

In *Smith*, the relationship was direct and the civil matter arose out of the prior criminal action. In this case, the estate planning does not directly relate to the alleged misconduct of defendants that plaintiffs allege to have been engaged in by defendants which plaintiffs claim justifies their suit. The concept in the *Smith* case is harmonious with URPC 1.9 which precludes representation in the same or "substantially factually related matter."

Subsequently, in *Graham v. Wyeth Laboratories*, 906 F.2d 1419 (10th Cir.1990) an issue of whether the plaintiff's counsel in a DPT vaccine case should be disqualified was remanded for further hearings. The case considered the Kansas Rules of Professional Conduct (KRPC) which are somewhat but not completely akin to the URPC. Counsel who had been with a law firm representing defendants joined the plaintiff's law firm and the prior defendant refused to waive any conflict. The court again referred to a "substantial relationship" standard. The court referred to KRPC Rule 1.9(b), which is not exactly the same as URPC 1.9. The court referred to four elements to be assessed in making the decision to disqualify. The elements are stated here with modification to meet the situation in this case. First, the lawyer must have represented a client whose interests are materially adverse to the other client. At this point Simonsen is not a party. His interests in the law suit are not *materially* adverse to plaintiff's interest in this

---

**6.** See also to the same effect, *Waters v. Western Co. of North America*, 436 F.2d 1072, 1073 (10th Cir.1971); *Redd v. Shell Oil Co.*, (*In re Graney*), 518 F.2d 311, 314 (10th Cir.1975); *SLC Limited v. Bradford Group West*, supra.

litigation and *vice versa.* However, Simonsen's interests could be affected because if plaintiffs prevail, Simonsen's 2.573% interest in Phonex could be impacted. But this is not direct and not "material" in the sense of the use of that term in *Graham.* Second, the matter of plaintiff's attorneys representation of Simonsen must be the same or substantially related to the representation of plaintiffs. In this case it is not. The representation of Simonsen in the estate planning context is not substantially related to the factual questions of the *other* defendant's liability as claimed in this suit, and no representation in this suit by anyone involves Simonsen as a party. He is not a party. The factual contexts of the "two representations are not similar or related," 906 F.2d at 1422, except in the most tangential manner. In *Bodily v. Intermountain Health Care Corp.,* supra, Judge Greene found a prior attorney/client relationship not to be substantially related and that disqualification was not warranted where the circumstances of simultaneous representation was peripheral and limited. The court said the "sanction of disqualification should be measured by the facts of each particular case as they bear on the impact of counsel's conduct at trial." 649 F.Supp. at p. 478. The court also noted the hardship on the party that would be effected by disqualification from trial is a relevant consideration, especially at the later stages of a case.[7] In *City Consumer Services v. Horne,* supra, this court found the relationship of the former representation to have been modest, akin to that of Johnson and Simonsen in this case, and therefore, not to warrant disqualification.

The third element for consideration identified in *Graham* is the attorney acquired information, protected by Rules 1.6 and 1.9(b), from the prior representation and which information is material to this litigation. In this case the information acquired by Johnson is not directly material to the litigation, but could be somewhat relevant to the case. However, the information is otherwise readily discoverable and Simonsen is not a party.

Johnson must maintain his former client's confidences. His affidavit indicates he has done so, and defendants have not shown to the contrary. Nothing particular to Simonsen has been or is shown to be likely to be disclosed and he is no longer involved in this case. Any attorney client privilege can be raised at trial and *must* be respected if valid. The fourth factor is knowledge of the conflict. In this case Johnson and HH & H did not know of the conflict until after some services had been rendered to Simonsen of an estate planning nature. The oversight is mere negligence. When the problem was discovered, Johnson withdrew as Simonsen's counsel. Up to that point Johnson had not been involved in the litigation in this case.[8]

Most recently, in *SLC Limited v. Bradford Group West,* supra, the Tenth Circuit reviewed the law as to attorney disqualification. The court held a Utah district bankruptcy court had properly disqualified the attorney with the conflict but not the law firm of the attorney and held screening measures imposed by the bankruptcy court to be unnecessary. The court considered the URPC and referred to Rule 1.9. The court reaffirmed the "substantially related" concept and referred to *Smith* and *Graham.* The court did say that the URPC changed some communication presumptions that had been discussed in *Smith:*

> *Whatcott* was decided, however, before Utah adopted the Rules of Professional Conduct and, as we noted in *Whatcott,* the Model Rules shift from a per se disqualification rule, to "support a functional analysis of such conflicts of interest and oppose application of an irrebuttable presumption." Id. at 1101 n. 2. Under this functional analysis, imputed disqualification of a law firm is determined on the facts of the particular situation and is driven in part by the extent to which the attorney involved had access to information about his former client. Thus, although the burden remains with the firm whose disqualification is

---

7. This case had been ongoing for some time before the motion was made.

8. Johnson, however, appeared as counsel at Simonsen's deposition after Simonsen had been dismissed as a party. Johnson appeared with other HH & H counsel for plaintiffs. The magistrate judge directed he not be present when the deposition was taken. His appearance appeared to be coercive to Simonsen.

sought, a firm is disqualified only when the attorney involved had actual knowledge of material information protected by Rules 1.6 and 1.9(b).

An individual attorney's continuing duty of loyalty to his client may prevent him from taking an adverse position, but this would not extend to his new firm as a whole. The Utah Rules explicitly reject as "unrealistic" the presumption that a partner in a law firm has access to all the confidences of all the firm's clients, and dismiss the Model Code's "appearance of impropriety" standard as "question-begging." Utah R.Prof. Conduct 1.10 cmt. Instead, the comments observe that:

> [T]he rule of disqualification should not unreasonably hamper lawyers from forming new associations and taking on new clients after leaving a previous association. In this connection, it should be recognized that today many lawyers practice in firms, that many to some degree limit their practice to one field or another and that many move from one association to another several times in their careers. If the concept of imputed disqualification were defined with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel.

The court held this firm not to be disqualified under URPC 1.10 although the attorney who represented the other client was properly disqualified. This holding is apropos to this case.

The defendants have filed a supplemental memorandum to support the motion to disqualify. It is based on Johnson's appearance at Simonsen's deposition. However, Johnson did not actually participate in the deposition because of this court's order. The court is disturbed by F. McKay Johnson and Evan Schmutz's conduct in having Johnson at the deposition. Up to such point, Johnson's conduct, based on his affidavit, had been responsible and he acted in an ethical fashion. Johnson's affidavit describes himself in terms that indicate he is not a litigation attorney. Why then did he appear at the deposition of his former client when the litigation could adversely effect the former client's asset? The deposition was to determine Simonsen's relationship to Johnson and Johnson may have been concerned as to what Simonsen may say about that relationship. However, he should not have appeared representing plaintiffs or HH & H. Such could give the appearance of a willingness to provide information relating to the prior representation. See Rule 1.9(b) URPC.

The defendants assert Johnson did relate confidential information to Schmutz. It is claimed Johnson relayed the existence of "Max Smith an accountant who had aided Simonsen" in his estate planning. However, Johnson's affidavit shows (¶ 18) that he made a recommendation to Simonsen concerning violation of his Phonex stock "that he hire an independent CPA firm to produce an appraisal report. Mr. Simonsen asked me to recommend a CPA firm. I made a recommendation which Simonsen followed." Subsequently, in Simonsen's deposition (p. 44) he answered questions about the statements in Johnson's affidavit. (See deposition of Simonsen). Simonsen identified and confirmed, apparently without objection, the association Max Smith. To this extent the identity of Smith, if it were protected by an attorney/client privilege, has been waived. *In re Grand Jury Subpoena,* 482 F.2d 72, 82 (2d Cir.1973); *United States v. Bernard,* 877 F.2d 1463, 1465 (10th Cir.1989); *United States v. Pauldino,* 487 F.2d 127, 130 (10th Cir.1973) (waiver when client testified about privileged matters). This can occur by giving testimony at a deposition, *Hollins v. Powell,* 773 F.2d 191 (8th Cir.1985). In this case Simonsen was represented by counsel, who also represents the other defendants.

A communication between attorney and client is privileged under Rule 501, F.R.E. only if it is necessary to obtain legal advice or assistance. Accounting services associated with legal advice are protected if the accountant is acting as an agent of the attorney. See *United States v. Kovel,* 296 F.2d 918, 922 (2d Cir.1961). But it must be shown the accountant must act as an agent of the attorney or the client for the rendition of legal advice or services. *United States v.*

Gurtner, 474 F.2d 297, 299 (9th Cir.1973) (no privilege); *Harkobusic v. Gen. Am. Transp. Corp.,* 31 F.R.D. 264 (D.W.D.Pa.1962); Rice, *Attorney–Client Privilege in the United States,* § 7.10 (1993). Identity may not necessarily be a part of the attorney/client privilege. *In re Grand Jury Subpoenas,* 906 F.2d 1485 (10th Cir.1990); *In re Shargel,* 742 F.2d 61 (2d Cir.1984). *In re Grand Jury Proceedings,* 602 F.Supp. 603 (D.R.I.1985).

However, the full scope of any privilege or confidential protection need not be determined in this motion. As has been noted there is inadequate evidence to support a claim that HH & H received any privileged or work product materials adverse to the defendants or that defendants are prejudiced from HH & H's continued participation in this case. There is no basis to disqualify HH & H. Further, such disqualification at this time, absent a showing of prejudice, would work a hardship and further delay the case.

The standards articulated by the decisions from this circuit reject the defendants' contention of a per se disqualification rule. Defendants have not discussed the relevant precedents from this circuit or district. These are the only precedents, binding on this court, except those from the Supreme Court. Defendants have not referred to the relevant Tenth Circuit cases. *United States v. Spedalieri,* 910 F.2d 707 (10th Cir.1990). The law of this circuit rejects defendants' contention for a per se rule of disqualification. Also, applying *SLC Limited v. Bradford Group West,* supra; *Graham v. Wyeth Laboratories,* supra; and *Smith v. Whatcott,* supra, the court finds HH & H should not be disqualified. There is no substantial factual relationship between the representation of Simonsen by Johnson and the remaining issues in this case. However, F. McKay Johnson should be disqualified from any participation in this case; especially to protect the confidentiality of information that Simonsen might have communicated to Johnson. Johnson is not to participate any further in this litigation. Therefore,

IT IS HEREBY ORDERED that the defendants' motion to disqualify the law firm of Hill, Harrison and Hill representing plaintiffs is denied. F. McKay Johnson is disqualified from any participation in this case. Any further stay in this case is denied. The matter should proceed to trial.

DATED this 3d day of March, 1994.