Michael Anthony **ARCHULETA,**
Petitioner,

v.

Steven **TURLEY,** Warden, Utah
State Prison, Respondent.

**Case No. 2:07–MC–630.**

United States District Court,
D. Utah,
Central Division.

Oct. 17, 2012.

Order Denying Reconsideration
Jan. 15, 2013.

Ken Murray, Dale A. Baich, Jon M. Sands, Arizona Federal Defender Office, Phoenix, AZ, Zachary E. Peterson, Joel J. Kittrell, Richards Brandt Miller Nelson, David A. Christensen, Federal Public Defender District of Arizona, Salt Lake City, UT, Petitioner.

Mark C. Field, Utah Attorney Generals Office, Thomas B. Brunker, Salt Lake City, UT, for Respondent.

**TENA CAMPBELL, District Judge.**

On June 1, 2012, Petitioner Michael Anthony Archuleta filed what was incorrectly styled as an Objection to Appearance of Mark Field as Counsel for Respondent and a Memorandum in Support of Petitioner's Objection to Appearance of Mark Field as Counsel for Respondent.[1] (*See* Dkt. No. 41 and 42.) After the court granted an extension of time to submit his response, Respondent Steven Turley[2] filed his Response on July 3, 2012. (*See* Dkt. No. 47.) Mr. Archuleta submitted his Reply on July 17, 2012. (*See* Dkt. No. 49.)

Mr. Archuleta argues that because Mr. Field handled his state habeas appeal as a law clerk when the case was in the state court system, Rule 1.12 of the Utah Rules of Professional Conduct bars Mr. Field from now representing the state in Mr. Archuleta's federal habeas action before the court. Rule 1.12 prohibits former judges and law clerks from later representing anyone in connection with "a matter" on which they "personally and substantially" worked. *See* Utah R. Prof'l Conduct 1.12(a). Mr. Archuleta contends that he will suffer prejudice in his habeas proceedings before the court unless Mr. Field is disqualified because Mr. Field's violation of Rule 1.12 results in an unfair advantage for the state.

The state does not dispute that Mr. Field worked as a law clerk for state district court judges with capital cases, or that Mr. Field was "personally and substantially" involved in Mr. Archuleta's habeas appeal when it was in state court. The state also agrees that the Utah Attorney General assigned Mr. Field to work on federal capital cases, including Mr. Archuleta's.

But the state takes the position that because Mr. Archuleta's state habeas appeal is not the same matter as his federal habeas appeal, Rule 1.12 does not prohibit Mr. Field from working on the federal habeas case. The state also argues that even if Rule 1.12 prohibits Mr. Field's involvement in Mr. Archuleta's case, that prohibition alone does not mean the court must disqualify him. Finally, the state argues that motions to disqualify are granted rarely, and that Mr. Archuleta has not shown how he will suffer prejudice by Mr. Field's continued representation of the state.

## I. BACKGROUND

Mr. Field worked for fifteen years as the capital litigation staff attorney for the Utah Administrative Office of the Courts. During that time, he provided legal research, writing, and other law clerk assistance to state district court judges with capital cases before them, including Mr. Archuleta's. (*See* Dkt. No. 42, Ex. D.)

The Utah Supreme Court issued its final decision regarding Mr. Archuleta's state postconviction appeal on November 22, 2011. One month later, on December 21, 2011, the Attorney General interviewed Mr. Field to work in the Criminal Appeals Division, and offered him a job the next day. Mr. Field accepted the job offer immediately, and started work for the state on January 17, 2012. (*See* Dkt. No. 47 at 3–5.)

---

1. Given the nature of Mr. Archuleta's objection, and that he filed it with a supporting memorandum, the court concluded that Mr. Archuleta had filed a motion to disqualify Mr. Field and made that change in the Docket. The court scheduled a hearing on Mr. Archuleta's motion for September 27, 2012. After carefully reviewing the parties' submissions in preparation for the hearing, the court concluded the hearing was not necessary.

2. Mr. Turley is the named Respondent for the State of Utah. The court will refer to him as the state.

On that date, the Attorney General established an ethics screen under Rule 1.12 to prevent Mr. Field from working on *Menzies v. State*, which is still pending in Utah's Third District Court.[3] (*See* Dkt. No. 42, Ex. E.)

But the Attorney General's Office did not establish an ethics screen between Mr. Field and the other cases he worked on as a law clerk in state court. Instead, the Attorney General assigned him to work on them in federal court.

On March 26, 2012, Mr. Field appeared as counsel for the state in Mr. Archuleta's case. (*See* Dkt. No. 35.)

On April 6, 2012, Mr. Archuleta's federal habeas counsel sent a letter to Utah Attorney General Mark Shurtleff expressing concern over Mr. Field's appearance, and asking for additional information about Mr. Field's work as the capital litigation staff attorney in state court, as well as information about Mr. Field's current and anticipated work on federal capital cases. (*See* Dkt. No. 42, Ex. C.)

On April 26, 2012, Mr. Shurtleff responded to Mr. Archuleta's lawyer and stated that "Mr. Field was not involved as a law clerk in the only matter you specifically reference—Mr. Archuleta's federal habeas action—because he did not work for the federal courts." (Dkt. No. 42, Ex. D at 2.) Mr. Shurtleff also stated that, in addition to working as co-counsel on Mr. Archuleta's federal habeas appeal, Mr. Field would appear for the state "in the federal habeas matters involving Messrs. Kell and Honie if those matters actually proceed." (*Id.*)

## II. APPLICABILITY OF RULE 1.12

As the capital litigation staff attorney, Mr. Field was a lawyer who worked for the state government. But he did not advocate on behalf of the state or serve in an official capacity for the state, which would place him under Rule 1.11 of the Utah Rules of Professional Conduct. Rather, Mr. Field was a specialized career law clerk for state district court judges with capital cases, and the appropriate professional rule to consider is Rule 1.12.

Rule 1.12 states: "[A] lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge . . . or law clerk . . . unless all parties to the proceeding give informed consent, confirmed in writing." Utah R. Prof'l Conduct 1.12(a).

The parties agree that Mr. Field was a law clerk who "participated personally and substantially" in Mr. Archuleta's state habeas appeal, as well as in subsequent motions to set aside the district court's post-conviction judgment. The parties also agree that Rule 1.11, which is substantially the same rule as Rule 1.12, should be used to guide the court's understanding of the word "matter" in Rule 1.12.

Rule 1.11 defines "matter" to include "any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, or any other particular matter involving a specific party or parties." Utah R. Prof'l Conduct 1.11(e).

█ By choosing the word "matter" for Rule 1.11 and Rule 1.12, the Utah Su-

---

**3.** The Attorney General provided late notice of this screen to Mr. Menzies's counsel on May 1, 2012. (*See* Dkt. No. 42, Ex. F.) The ethics wall appears to extend only to Mr. Menzies's state court action; presumably Mr. Field is free to work on Mr. Menzies's federal habeas action even though the Attorney General did not list Mr. Menzies's case as one Mr. Field would work on in the future. (*See* Dkt. No. 42, Ex. D.)

preme Court intended the two rules to encompass more than just the same lawsuit. In the context of interpreting "matter" for the purpose of understanding Rule 1.12, courts have held: "The same lawsuit or litigation is the same matter. The same issue of fact involving the same parties and the same situation or conduct is the same matter.... [T]he same 'matter' is not involved [when] ... there is lacking the discrete, identifiable transaction of conduct involving a particular situation and specific parties." *See Poly Software Int'l v. Datamost Corp.*, 880 F.Supp. 1487, 1492 (D.Utah 1995) (citing *Sec. Investor Protection Corp. v. Vigman*, 587 F.Supp. 1358, 1365 (C.D.Cal.1984) (holding two civil lawsuits, filed ten years apart with some identical and some different claims, constituted the same matter because they addressed the same conduct involving a particular situation and specific parties)).

■ But even when two matters are not the same as defined in Rule 1.11 and applied in Rule 1.12, a lawyer may be disqualified under Rule 1.12 if he received confidential information that tainted the litigation and resulted in an unfair advantage for one party. *See Poly Software*, 880 F.Supp. at 1494–1495. The court in *Poly Software* used Rule 1.12 to disqualify a lawyer who mediated a dispute involving the parties who were then before the court in a legally distinct, but substantially factually related case. The court interpreted "matter" under Rule 1.12 to include not only the definition of Rule 1.11, but also the broader definition of "substantially factually related matter" as understood in Rule 1.9 of the Utah Rules of Professional Conduct. *See id.* at 1491–1495.

■ No such broad interpretation is needed here. The "matter" before the court is the same "matter" that Mr. Field worked on in state court: Mr. Archuleta's case. Whether in state court or federal court, the parties are the same: Mr. Archuleta and the state. The same parties are arguing about "the same issue of fact" and the "same situation or conduct": the same murder, the same trial, and the same direct appeal. The constitutional issues in Mr. Archuleta's state habeas appeal are the same ones that will be before the court in his federal habeas appeal. Even the lead attorneys are the same: Mr. Brunker for the state, and Mr. Murray for Mr. Archuleta.

■ Nevertheless, the state makes a temporal argument and a jurisdictional argument to avoid the restrictions of Rule 1.12. The state contends that because Mr. Archuleta's state habeas action concluded, it is not the same matter as Mr. Archuleta's federal habeas action. But Rule 1.12 and Rule 1.11 do not say anything about a matter being limited by time or final judgment, nor would the underlying rationale for either rule be protected if they did. The prohibition of Rule 1.11 and Rule 1.12 against subsequent representation of a client in a matter that a lawyer worked on as a government lawyer, or as a judge or law clerk, "flows from the same public policy imperative of preventing the abuse of public office or appointment." *See Poly Software*, 880 F.Supp. at 1492 (citing Geoffry C. Hazard & W. William Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* § 1.12:101 (2d ed. 1994)).

The state also makes a jurisdictional argument to avoid Rule 1.12, and contends that Mr. Archuleta's habeas appeal in federal court is a different proceeding before a different judge of a different sovereign and is therefore a different "matter." But, again, the definition of matter does not include these considerations.

As a lawyer licensed to practice law in Utah, and as a lawyer making an appear-

ance before the court, Mr. Field is bound by the requirements of Rule 1.12. Mr. Field's appearance in Mr. Archuleta's matter before the court violates Rule 1.12, even if unintentionally and even if Mr. Field accepted employment and assignments from the Criminal Appeals Division in good faith.[4]

## III. MOTION TO DISQUALIFY

■■ Judges have broad discretion, as part of their supervisory powers, to control and maintain their courtrooms and to determine which lawyers are allowed to appear before them. *See Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994). "Motions to disqualify are governed by two sources of authority. First, attorneys are bound by the local rules of the court in which they appear. Federal district courts usually adopt the Rules of Professional Conduct of the states in which they are situated." *Id.* The District of Utah has done so. *See* DUCiv. R. 83-1.1(g).

■ Second, "because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law ... [and are thus] governed by the ethical rules announced by the national profession and considered in light of the public interest and the litigants' rights." *Cole*, 43 F.3d 1373 at 1383 (internal quotation and citations omitted); *see also Poly Software*, 880 F.Supp. at 1489–90.

The state contends that motions to disqualify rarely should be granted, and cites three unpublished opinions from this district to support that position: *Nelson v. Supernova Media*, 2011 WL 223797

(D.Utah 2011) (finding no ethical violation and denying motion to disqualify); *Johnson v. Salt Lake Comty. Coll.*, 2011 WL 2636840 (D.Utah 2011) (finding no ethical violation and denying motion to disqualify); *Evans v. Taylorsville City*, 2007 WL 2892629 (D.Utah 2007) (finding no ethical violation and denying motion to disqualify). Each unpublished opinion cited by the state relies upon *Parkinson v. Phonex Corp.*, 857 F.Supp. 1474, 1480 (D.Utah 1994), for the proposition that motions to disqualify are granted rarely.

The original point of authority for that proposition in *Parkinson* is *Koller By and Through Koller v. Richardson–Merrell, Inc.*, 737 F.2d 1038 (D.C.Cir.1984), *vacated and remanded on other grounds* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) (holding order disqualifying counsel in a civil case is not collateral order subject to immediate appeal).

In *Koller*, the Court of Appeals for the District of Columbia Circuit reviewed, on interlocutory appeal, the district court's decision to disqualify two lawyers and their law firm. Although *Koller* was vacated and remanded on jurisdictional grounds, the court's summary of how federal courts view motions to disqualify remains helpful because it provides context for the principle that the state urges the court to follow here. The *Koller* court agreed with the Second Circuit that motions to disqualify should be granted rarely because they are filed more frequently than they are warranted, and are often wasteful, time-consuming, and used for tactical, not substantive purposes. *See Koller*, 737 F.2d at 1055–1056 (citing *Board of Educ. of N.Y.C. v. Nyquist*, 590

---

4. Mr. Field's conduct also appears to violate the spirit of Rule 1.11, which exists to prevent lawyers from exploiting public office for the advantage of subsequent clients, even if those clients are other public entities. *See* Utah R. Prof'l Conduct 1.11, comments [3], [4] and [5].

F.2d 1241, 1246 (2d Cir.1979) (citations and footnotes omitted)).

 But the better reference to *Koller* in *Parkinson* would have explained that motions to disqualify are granted rarely unless an ethical violation has occurred that would taint the underlying trial. Such ethical violations typically fall into two categories: (1) a conflict of interest that prevents zealous advocacy or (2) the potential use of privileged or confidential information about one party that would give an unfair advantage to a present client.

Viewed in this light, the motions to disqualify in the unpublished cases cited by the state were not denied simply because such motions are rarely granted, but because no ethical violations occurred in those cases.

 Even when an ethical violation occurs, disqualification is not automatic. *See Parkinson,* 857 F.Supp. 1474, 1476 (D.Utah 1994); *see also* Utah R. Prof'l Conduct, Preamble at [20]. Rather, disqualification depends on whether a case is tainted by the ethical violation. *See Parkinson,* 857 F.Supp. at 1476. "The essential issue to be determined in the context of litigation is whether the alleged misconduct taints the trial." *Id.* To that end, a court should consider "[t]he egregiousness of the violation, the presence or absence of prejudice to the other side, and whether and to what extent there has been a diminution of effectiveness of counsel.... In addition, equitable considerations such as the hardship to the other side and the stage of trial proceedings are relevant." *Id.*

 The Attorney General hired Mr. Field one month after Mr. Archuleta's case concluded in state court. Part of what made Mr. Field an attractive candidate was his intimate knowledge of Mr. Ar-

chuleta's case (and others). Mr. Field has a facility with the facts and law involved in Mr. Archuleta's case that no one else has, and because of that, he appears ideally suited to litigate Mr. Archuleta's federal habeas appeal on behalf of the state. The state represents that Mr. Field "did not have access to any of [Mr.] Archuleta's confidential information" and cannot exploit any confidential information he may have received in state court about Mr. Archuleta's case because the court's review is limited to the record. (*See* Dkt. 47 at 3 and 11.) Moreover, the state contends that disqualifying Mr. Field would place an unnecessary restriction on a law clerk's transfer of employment. (*See id.* at 13.)

Despite these arguments, allowing Mr. Field to represent the state in Mr. Archuleta's federal habeas action would unmistakably taint the litigation. Mr. Archuleta is before the court in an action for federal habeas relief from his death sentence. Based on the law and the facts, he is arguing for his life and the state is arguing for his death. Mr. Field's experience as a specialized law clerk for capital cases in state court, as well as his specific work on Mr. Archuleta's state habeas appeal, "gives him an unfair advantage in the present case" that he will leverage to the state's advantage, even if unintentionally. *See Poly Software,* 880 F.Supp. at 1495.

More concerning is the risk to the integrity of the federal habeas proceeding created by the fact that Mr. Field may well have confidential information related to Mr. Archuleta's case that he inadvertently may use for the state's benefit.

Mr. Field was not only privy to judicial thinking about Mr. Archuleta's case, but he also had access to sealed ex parte filings and other confidential information in Mr. Archuleta's case. Rule 1.12 exists for precisely this reason. The ethical imperative against representing "anyone" in a

matter that the lawyer worked on "personally and substantially" as a judge or law clerk guards against the possibility of abuse, and recognizes that lawyers themselves may not always be the best guardians of the confidential information they obtained in such positions. The court should not have to second-guess what Mr. Field knows, or parse through case histories and docket reports to determine whether or not Mr. Field has confidential information that he is going to use for the benefit his new client. Mr. Archuleta should not be asked to bear that risk.

Enforcing the strictures of Rule 1.12 against Mr. Field does not unduly prejudice him, the Attorney General, or the state. Granting the motion to disqualify does not mean that Mr. Field cannot work as a lawyer, or even as a lawyer in the Criminal Appeals Division of the Attorney General's office. What it does mean is that he cannot appear in federal court as an advocate for one of the parties whose case he was "personally and substantially" involved with as a law clerk in state court. To date, that would bar him from six cases in the District of Utah: Mr. Archuleta's and five others. The Criminal Appeals Division has many other cases that are open to Mr. Field.

The Attorney General is also not unduly prejudiced by granting the motion to disqualify Mr. Field. The Attorney General will not get the windfall of legal expertise and knowledge of capital cases that it hoped to acquire via Mr. Field's employment. But the Attorney General undoubtedly has many other well-qualified lawyers who can assist Mr. Brunker in representing the state's interests in Mr. Archuleta's federal habeas action.

Since this motion was filed in a timely manner at the beginning of federal litigation, the state's legal interests will not be harmed if another lawyer is substituted to work on Mr. Archuleta's case. This is especially true because, as the state noted, Mr. Archuleta's petition has not been filed and Mr. Field has not yet done any substantive work on Mr. Archuleta's case. (*See* Dkt. No. 43 at 2.)

 Finally, the issues raised by Mr. Field's employment by the Attorney General and his involvement in Mr. Archuleta's federal habeas case implicate larger social and public interests. "[W]hen there is no claim that the trial will be tainted, appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases." *Nyquist,* 590 F.2d at 1247.

 When the case will be tainted without disqualification, the regularity of judicial proceedings in state court, as well as the integrity and neutrality of the proceedings before the federal court, weigh in favor of granting the motion to disqualify. *See Erickson v. Newmar Corp.* 87 F.3d 298, 303 (9th Cir.1996) (finding courts may disqualify attorneys not only for acting improperly but also for failing to avoid the appearance of impropriety because courts have responsibility to maintain public confidence in the legal profession); *see also Kessenich v. Commodity Futures Trading Comm'n,* 684 F.2d 88, 97–99 (D.C.Cir.1982) (holding a former government lawyer should be disqualified even without evidence that he shared confidential information because of appearance of impropriety).

For the foregoing reasons, Mr. Archuleta's Motion to Disqualify Counsel is GRANTED.

Order Denying Motion to Reconsider

On November 9, 2012, Respondent Ste-

ven Turley[1] filed a motion and over-length supporting memorandum that asked the court to reconsider its October 17, 2012 order disqualifying Mark Field from appearing as counsel for the state. (*See* Docket Nos. 52 and 53.)

Four days later, the state filed an amended memorandum that included a table of contents and a motion requesting permission for the already-filed overlength brief. (*See* Docket Nos. 54 and 55.)

Petitioner Michael Anthony Archuleta immediately filed an opposition to both motions. (*See* Docket No. 57.)

The court accepted the state's overlength memorandum and ordered Mr. Archuleta to file a response on December 7, 2012, which he did. (*See* Docket Nos. 57 and 60.)

The state filed its reply on December 21, 2012. (*See* Docket No. 62.)

"[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir.2000). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* Motions to reconsider are "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.*

The state's motion to reconsider was not appropriate. But the court carefully considered the state's arguments, as well as the response offered by Mr. Archuleta, and finds that there is no basis to reconsider its previous order disqualifying Mr. Field from appearing as counsel for the

state in Mr. Archuleta's case, or any of the other capital habeas cases in the District of Utah that Mr. Field handled when he was a capital litigation law clerk in state court.

There has been no change in the controlling law, and none of the legal arguments advanced by the state require a different outcome in the court's disqualification analysis.

None of the evidence submitted by the state with its motion for reconsideration was new and previously unavailable evidence, and the court did not need to review it. But even after considering the proffered evidence, the court does not find that the evidence compels a different outcome. Rather, the court finds that the affidavit from Laura B. Dupaix, Division Chief for the Criminal Appeals Division of the Utah Attorney General's Office, supports the court's disqualification order. The court agrees with Ms. Dupaix that "death cases are time-consuming and emotionally draining," and appreciates the state's difficulty in finding lawyers to represent its interests in death penalty cases. (Docket No. 54, Ex. B at 2–3.) But that difficulty is at least partly of the state's own making given the state's advocacy for capital punishment and the long-time practice in the Criminal Appeals Division of not requiring its lawyers to work on capital cases, and of honoring "attorneys' requests to limit the amount of time" they work on such cases (*Id.*) "The limited availability of attorneys willing and able to work on death penalty cases" is a policy and staffing problem for the state to fix, not the court. (*Id.*)

Five attorneys within the Utah Attorney General's office applied for Mr. Field's po-

---

1. Steven Turley is the named respondent for the State of Utah. The court will refer to him as the state.

sition and, while they "were not as qualified as Mr. Field," three of them were willing to work on death penalty cases. (*Id.* at 4.) Those facts make it impossible for the court to take seriously the state's position that, of all of the internal and external applicants, Mr. Field was the "only" applicant who was qualified for the position and "who unequivocally stated his willingness to work on death penalty cases." (*Id.*) Mr. Field's previous work as a law clerk in state court on capital cases like Mr. Archuleta's may have made him more qualified than some of the other qualified applicants. But that previous work is also what ethically bars him from representing the state's interests in cases like this one.

There is no manifest injustice visited upon the state or Mr. Field by the court's October 17, 2012 disqualification order. The state makes much of its right to have the lawyer of its choice represent its interests before the court. But the state's right to counsel, like any litigant's, is bound by rules, including ethical ones. The state's lawyer must be one who can ethically appear in the case before the court. Mr. Field is not that lawyer. The court is not going to overlook an ethical violation, or allow one to continue, in a death penalty case. The state must find someone else to litigate its capital cases in federal court, which it can do from within its own office.

The court noted in its disqualification order that Mr. Field's ethical violation may well have been unintentional, and that his employment with the Criminal Appeals Division of the Utah Attorney General's Office may well have been offered, and accepted, in good faith. Mr. Field's representations in his affidavit certainly support those conclusions. (*See* Docket No. 54, Ex. A.) Mr. Field is no more culpable than the entire Attorney General's office, but

the applicable rules of professional conduct apply to the individual lawyer, not the state institution. The court's finding that Mr. Field's appearance before the court in Mr. Archuleta's case violated Rule 1.12 of the Utah Rules of Professional Conduct is not a comment about Mr. Field's character, or his abilities as a lawyer. The court has not maligned Mr. Field's professional reputation, and the court has not requested sanctions against Mr. Field through the court's disciplinary committee or the Utah State Bar. Finally, the court notes that, appropriately, Mr. Field has the continued support of the Attorney General's Office where his expertise in postconviction criminal matters will be put to good use in other cases.

Mr. Field's appearance for the state in this case or others like it should not be repeatedly litigated. Such litigation would not serve the interests of justice and the economy of judicial resources. Such litigation also would not serve the interests of Mr. Archuleta and other petitioners in having their federal habeas reviews conducted in a timely manner, or the state's interests in the finality of its judgments.

The motion for reconsideration is denied.

SO ORDERED this 15th day of January, 2013.