**In re JOHORE INVESTMENT COMPANY (U.S.A.), INC.**

Civ. No. 85–0361.
Bankruptcy No. 83–00555.

United States District Court,
D. Hawaii.

Sept. 20, 1985.

---

Edward A. Jaffe, Richard R. Clifton, William J. Wynhoff, Thomas Yamachika, Jack Spradlin, Phylis Spradlin, H. William Burgess, Stephen P. Pingree, Honolulu, HI, for plaintiff.

## ORDER REVERSING BANKRUPTCY COURT'S DISQUALIFICATION OF COUNSEL

FONG, District Judge.

An appeal of the bankruptcy judge's order disqualifying counsel and various related matters in this case came on for hearing before this court on July 22, 1985. Edward A. Jaffe appeared on behalf of Territorial Savings and Loan Association and Territorial Enterprises, Inc., and Stephen P. Pingree appeared on behalf of Johore Investment Company (U.S.A.), Inc. The court, having considered the bankruptcy court's decision and order, the appeal therefrom and the motion for summary reversal thereof, the memoranda in support and in opposition, and the oral arguments of counsel, and being fully apprised of the premises herein, finds as follows:

On March 28, 1985, Judge Chinen entered a decision and order granting debtor Johore Investment Company (U.S.A.), Inc.'s motion for disqualification of Cades Schutte Fleming & Wright (hereinafter referred to as "Cades") and dismissing Cades's counterclaim for court costs and sanctions. The above order, *inter alia,* disqualified Cades from further representation of Territorial Savings & Loan Association and Territorial Enterprises, Inc. (hereinafter collectively referred to as "Territorial") in the bankruptcy action below.

Territorial appeals from the bankruptcy court's disqualification decision and order, and moves for summary reversal of the same.

## I. MOTION FOR SUMMARY REVERSAL

Appellant Johore Investment Company (U.S.A.), Inc. (hereinafter referred to as "Johore") filed its answering brief 28 days after service of appellants' opening brief, 13 days after the 15–day deadline under Bankruptcy Rule 8009(a).

Territorial argues that this court should summarily reverse the bankruptcy court's disqualification order for the following reasons: (1) appellee failed to file an answering brief in a timely manner; and (2) appellee failed to provide relevant legal authority in its memoranda. Territorial argues, in the alternative, that the court should decide the case on appellants' brief and bar appellee's counsel from oral argument.

■ The late filing of the answering brief, standing alone, is not so serious as to justify summary reversal. Territorial has not established that it was prejudiced in any way by the late filing; and Territorial clearly had ample time within which to file a reply brief, since the original June 5, 1985 hearing was continued to July 22, 1985.

■ As for Territorial's second contention, the court notes that it sits in review of the bankruptcy judge's order, which contains ample reference to the relevant law. Thus, even if appellee's citation of relevant legal authority were inadequate, that is not a matter of concern for this court on appeal.

Accordingly, the court finding the requested action a drastic sanction out of proportion with the untimely filing and the allegedly inadequate briefing, IT IS HEREBY ORDERED that Territorial's Motion for Summary Reversal or to Bar Appellee from Oral Argument be, and the same is, DENIED.

## II. STANDARD OF REVIEW

As to the appeal itself, there is a preliminary issue as to whether the bankruptcy judge had jurisdiction to enter a final disqualification order.

Under the Bankruptcy Amendments and Federal Judgeship Act of 1984, the bankruptcy judge is an adjunct of the Article III district court, and not a judge of a separate Article I "legislative" court. More specifically, the bankruptcy court is "a unit of the district court," and each bankruptcy judge

is "a judicial officer of the district court." 28 U.S.C. § 151.

By order dated September 14, 1984, by amended order dated May 20, 1985, and pursuant to 28 U.S.C. § 157(a), this court referred to the bankruptcy judge "all cases arising under title 11 and all proceedings arising under title 11 or arising in or related to a case under title 11".

Under 28 U.S.C. § 157(b)(1), therefore, the bankruptcy judge is authorized to "hear and determine all cases under title 11 and all *core proceedings* arising under title 11, or arising in a case under title 11 (emphasis added)." The bankruptcy judge enters final orders on matters within his § 157(b)(1) powers, and his findings of fact stand unless "clearly erroneous." An extensive, but non-exclusive, listing in 28 U.S.C. § 157(b)(2) sets forth matters that are considered "core proceedings," including "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A).

Additionally, under 28 U.S.C. § 157(c)(1), a bankruptcy judge may also hear non-core proceedings that are "related to" a case under title 11. In such non-core proceedings, however, the bankruptcy judge is required to submit proposed findings of fact and conclusions of law to the district court, which must review *de novo* those matters to which any party has timely and specifically objected.

Everything that occurs in a bankruptcy case is a "proceeding," and the term "proceeding" is used in its broadest sense and encompasses what have been called "contested matters," "adversary proceedings," "plenary actions under current bankruptcy law," and "any disputes related to administrative matters in a bankruptcy case." *See* Senate Report No. 95–989, July 14, 1978, Congressional Record No. 124, § 216, p. 153; House Report No. 95–595, September 8, 1977, § 1471, p. 445, U.S.Code Cong. & Admin.News 1978, p. 5787. Accordingly, Johore's motion to disqualify counsel was clearly a proceeding in the bankruptcy action.

The issue before this court, therefore, is whether Johore's motion to disqualify counsel was a "core proceeding" or a "non-core proceeding" that was otherwise related to the case. If the matter was a "core proceeding," the bankruptcy court's findings of fact would stand unless clearly erroneous. If, on the other hand, the matter was a related "non-core proceeding," this court would be required to review *de novo* those portions of the findings to which objections have been filed.

■ For the reasons that follow, this court concludes that the motion to disqualify counsel was a "core proceeding," and that the bankruptcy judge properly issued a final decision and order in this matter.

First, a motion to disqualify counsel of a major secured creditor is a matter integrally tied to the administration of the estate, and disposing of such a motion is clearly a necessary function of the bankruptcy judge in presiding over the orderly administration of the estate. Accordingly, the court finds that Johore's motion to disqualify counsel was a "core proceeding" under 28 U.S.C. § 157(b)(2)(A).

■ Second, core proceedings are not limited to the matters listed in 28 U.S.C. §§ 157(b)(2)(A)–(O). Thus, even if Johore's motion to disqualify counsel were not technically within the scope of of 28 U.S.C. § 157(b)(2)(A), such a motion is so integrally a part of the bankruptcy court's administration of the bankruptcy case that it must be deemed a "core proceeding."

Finally, while Territorial has cited no authority for the proposition that a motion to disqualify counsel is a "non-core proceeding," it appears that at least one bankruptcy court has issued a final order on a motion to disqualify counsel after the effective date of the Bankruptcy Amendments and Judges Act of 1984. *See In re Ram Manufacturing, Inc.,* 49 B.R. 53 (Bkrtcy.E.D.Penn.1985).

Based on the foregoing, the court finds that the bankruptcy judge properly entered a final decision and order, and the court will not upset the bankruptcy court's findings of fact unless "clearly erroneous."

## III. DISQUALIFICATION OF COUNSEL

As the party moving for disqualification, Johore has the burden of establishing the following by a preponderance of the evidence: (1) the existence of a prior attorney-client relationship with the attorney now sought to be disqualified; and (2) that the matter involved in the prior representation is substantially related to the matters embraced within the pending suit, wherein the attorney appears on behalf of the opposing party. *Duncan v. Merrill Lynch, Pierce, Fenner & Smith,* 646 F.2d 1020, 1028 (5th Cir.1981), *cert. denied,* 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981); *Trone v. Smith,* 621 F.2d 994, 998 (9th Cir.1980); *Gas-A-Tron of Arizona v. Union Oil Co. of California,* 534 F.2d 1322, 1325 (9th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976); *Matter of Olson,* 21 B.R. 123, 126 (Bkrtcy.D.Neb. 1982); *T.C. Theatre Corp. v. Warner Brothers Pictures,* 113 F.Supp. 265, 268–69 (S.D.N.Y.1953).

Where the above showing has been made, there is a presumption that confidences were disclosed to the attorney during the course of the former representation. Some courts will not inquire into the nature and extent of such disclosure. *See, e.g., Duncan v. Merrill Lynch, Pierce, Fenner & Smith, supra,* 646 F.2d at 1028; *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562, 571 (2d Cir.1973); *T.C. Theatre Corp. v. Warner Brothers Pictures, supra,* 113 F.Supp. at 268–69.

The Ninth and Second Circuits, however, have sought to mitigate the harshness of the above approach by making the presumption rebuttable. The Ninth Circuit requires that the evidence establish "a reasonable probability" that confidential information was disclosed during the course of the prior representation. *Trone v. Smith, supra,* 621 F.2d at 1000. Although disqualification was ordered in that case, the court stated that disqualification may not be warranted where the "professional relationship with [the former client] had been aborted before any significant work had been done ... and before any discussions with the client other than the bare preliminaries of the representation were explored ..." *Id.* at 1000. Similarly, the Second Circuit will not disqualify a lawyer "when there is no realistic chance that confidences were disclosed," and a lawyer may rebut the above presumption by producing evidence that he received no confidences. *Silver Chrysler Plymouth, Inc. v. Chrysler Motor Corp.,* 518 F.2d 751, 756–57 (2d Cir. 1975).

In the absence of an attorney-client relationship, the lawyer's duties of loyalty and confidentiality under Canon 4 of the Code of Professional Responsibility do not apply. *Fred Weber, Inc. v. Shell Oil Co.,* 566 F.2d 602, 608 (8th Cir.1977), *cert. denied,* 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978); *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 90 (5th Cir.1976). Moreover, where the moving party has not established the existence of a prior attorney-client relationship, there is no presumption that confidential information was disclosed. *Brennan's, Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 174 (5th Cir.1979); *Wilson P. Abraham Construction Corp. v. Armco Steel Corp.,* 559 F.2d 250, 253 (5th Cir. 1977).

In concluding that Cades should be disqualified from representing Territorial in this case, the bankruptcy court made the following findings and conclusions: (1) an attorney-client relationship resulted from the November 4, 1983 meeting between Mr. Burgess and Mr. Swope; (2) a substantial relationship exists between the matters currently under litigation and the matter previously discussed by Mr. Burgess and Mr. Swope; and (3) while Cades contends that no confidences were disclosed to Mr. Swope during the November 4, 1983 meeting, there is a presumption that confidential information was communicated by the client during the course of the prior attorney-client relationship.

The bankruptcy court was correct in concluding that the matters involved in this case and the matter previously discussed by Mr. Burgess and Mr. Swope are sub-

stantially related. Thus, if there actually was an attorney-client relationship between Johore and Mr. Swope, there would be a presumption (rebuttable in the Ninth and Second Circuits) that confidential information was disclosed during the course of the prior relationship.

The issue now before the court is whether the bankruptcy court erred in concluding that an attorney-client relationship between Johore and Mr. Swope resulted from the single brief meeting between Mr. Burgess and Mr. Swope.

■ An attorney-client relationship is contractual and consensual, and such a relationship can be formed only with the consent of the attorney and individual seeking representation. *In re Yarn Processing Patent Validity Litigation, supra,* 530 F.2d at 90; *Matter of Olson, supra,* 21 B.R. at 126. The consent of the parties must be personal and must flow between the particular individuals, and a finding of an attorney-client relationship should not be based on the acts of an intermediary, because such a finding would be contrary to the fundamental principles of attorney-client representation. *Matter of Olson, supra,* 21 B.R. at 126.

■ There are certain situations, however, in which fiduciary obligations or an implied professional relationship may arise, even in the absence of an express attorney-client relationship. One such situation is where a prospective client, believing that he is consulting an attorney in a professional capacity with a view toward retaining the attorney, divulges confidential information. An implied attorney-client relationship may result from such a consultation, even if actual employment does not result. *Westinghouse Electric Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311, 1319 (7th Cir.), *cert. denied,* 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978); *Matter of Olson, supra,* 21 B.R. at 126; *Developments in the Law—Conflicts of Interest in the Legal Profession,* 94 Harv.L.Rev. 1244, 1321–22 (1981); *see also* ABA Code of the Professional Responsibility, EC 4–1.

In the preliminary consultation context, the existence of a attorney-client relationship rests upon the client's belief that he is consulting a lawyer in a professional capacity and his manifested intention to seek legal advice. *Westinghouse Electric Corp. v. Kerr–McGee Corp., supra,* 580 F.2d at 1319; C. McCormick, *Law of Evidence,* § 88, p. 179 (2d ed. 1972).

■ However, the prospective client's belief that he is consulting an attorney with the manifest intent to retain the attorney in a professional capacity must be reasonable. Courts have refused to disqualify counsel, for example, where the prospective client should have known that the relationship had not advanced to the point where it could be deemed a representation. *Levin v. Ripple Twist Mills, Inc.,* 416 F.Supp. 876, 883–84 (E.D.Pa.1976); *Developments in the Law—Conflicts of Interest in the Legal Profession,* 94 Harv. L.Rev. 1244, 1322–23 (1981). Additionally, a higher burden of knowledge may be imposed where, as here, the prospective client is a legally informed person or a lawyer. *City of Cleveland v. Cleveland Elec. Illuminating Co.,* 440 F.Supp. 193, 201–202 (N.D.Ohio 1976), *aff'd. mem.,* 573 F.2d 1310 (6th Cir.1977), *cert. denied,* 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978).

■ In this case, the evidence and the bankruptcy court's findings of fact clearly establish that there was no direct contact between Johore and Mr. Swope, and that there was no express attorney-client relationship between the two parties. It is undisputed that Mr. Swope never met or communicated with any officer or principal of Johore, and that he did not agree to the creation of an attorney-client relationship with Johore. The contact between Mr. Swope and Johore, if any, was indirect and minimal: i.e., Mr. Swope's brief meeting on November 4, 1983, with Mr. Burgess, attorney for Johore. Furthermore, Mr. Swope never initiated Cades's standard procedures for opening a new client file, did not bill Johore for the time he spent with Mr. Burgess, and never received any payment from Johore.

As to whether an implied attorney-client relationship between Johore and Mr. Swope might have resulted from the brief meeting between Mr. Burgess and Mr. Swope, the court, under the standard of review enunciated above, hereby sets aside certain findings of the bankruptcy court and finds as follows:

The clear weight of the evidence establishes that at the time of the brief meeting between Mr. Burgess and Mr. Swope, neither Mr. Burgess nor Johore believed that Johore was a prospective client consulting Mr. Swope with a manifest view toward retaining Mr. Swope as its attorney.

Johore's Statement of Affairs, filed less than a month after the single meeting between Mr. Burgess and Mr. Swope, makes no mention of any consultation with Mr. Swope, any retainer or legal fees paid to Mr. Swope or the Cades firm, or any agreement to pay the same. The Statement on Affairs, on the other hand, does list the following: (1) consultation with Mr. Burgess for October through November of 1983, (2) consultation with Jay Fidell for September through November of 1983; (3) a $10,000 retainer paid to Mr. Burgess; and (4) an agreement to pay Mr. Burgess at his rate of $150 per hour.

Additionally, it is clear from Mr. Burgess's affidavit that he exercised his own independent professional judgment on behalf of his own client, Johore, and that he used Mr. Swope's views only to firm up his own legal recommendations to Johore.

These undisputed facts support Mr. Swope's statement by affidavit that he recalls no discussion concerning Mr. Burgess's authority to seek advice and pay compensation, and that he conversed with Mr. Burgess only as a professional courtesy to a friend and fellow attorney.

The court recognizes that it is the practice of lawyers in Hawaii to ask each other for advice in their respective areas of expertise. Such consultation is freely given as a matter of courtesy and to improve the quality of legal practice, as expressly encouraged by EC 6–2 of the Code of Professional Responsibility. The attorneys receive such advice from fellow lawyers as a matter of professional courtesy and use such advice in formulating their own recommendations to their clients. As such, an essential attribute of the attorney-client relationship—i.e., legal advice given by a lawyer to a client—is missing from this form of consultation.

Based on the above, this court finds that the November 4, 1983 meeting was not a preliminary consultation between an attorney and a prospective client seeking representation, but a professional courtesy afforded by Mr. Swope to a fellow attorney. Accordingly, this court finds that the *Westinghouse* rule on preliminary consultations between a lawyer and a prospective client does not apply here, and that there was no implied attorney-client relationship between Johore and Mr. Swope.

There being no attorney-client relationship between Johore and Mr. Swope, either express or implied, the bankruptcy court erred in presuming that confidential information was disclosed to Mr. Swope during his meeting with Mr. Burgess. As stated above, the presumption that confidences were disclosed is applicable only where a prior attorney-client relationship exists, and where the matters involved in the past and present representations are substantially related. Where, as here, the court finds no existing attorney-client relationship, no presumption is raised.

Furthermore, in the absence of such presumption, the evidence before the court fails to establish any confidences disclosed by Mr. Burgess to Mr. Swope. The mere fact that Mr. Burgess showed the Johore file to Mr. Swope does not, by itself, support a finding that any confidential matters were disclosed to Mr. Swope. This is especially true where the court finds that Mr. Burgess did not consult Mr. Swope with a view to retain him as counsel for Johore, and that Mr. Swope reviewed the file only briefly during the course of performing a professional courtesy for his fellow attorney. This court, having considered all of the evidence, including the one and one-half pages of notes written down by Mr. Swope during his review of the file, finds that Mr.

Swope neither received any confidential information nor was requested to keep any of the information confidential.

Finally, the bankruptcy court erred in holding that "where, as is true here, confidential information is shown or given to an attorney who reviews such information, an attorney-client relationship is created." Not only is this conclusion of law overbroad and unsupported by existing law, but it is premised on the fact that Mr. Swope actually received any confidential information, a fact established neither by presumption nor by the evidence.

In summary, this court concludes as follows: First, based on the evidence, there was no express attorney-client relationship. Second, based on the evidence and the applicable law, no implied attorney-client relationship between Johore and Mr. Swope resulted from the November 4, 1983 meeting between Mr. Burgess and Mr. Swope. Third, the bankruptcy court erred in premising the attorney-client relationship between Johore and Mr. Swope on the fact that confidential information had been received by Mr. Swope, a fact not supported by the evidence or any applicable presumption. Finally, the evidence establishes only that there was a discussion between two attorneys, during which one attorney gave advice as a matter of professional courtesy to a fellow attorney, who used such advice to confirm his own recommendations to his client.

For all of the foregoing reasons, the court concludes that Johore has not carried its burden of establishing the required elements for disqualification, and that Mr. Swope and his law firm should not be disqualified for having extended a professional courtesy to Mr. Burgess.

Accordingly, IT IS HEREBY ORDERED that the bankruptcy court's decision and order disqualifying Cades as counsel for Territorial be, and the same is, reversed.