**RESEARCH CORPORATION TECHNOLOGIES, INC.,**
Plaintiff,

v.

**HEWLETT–PACKARD COMPANY,**
Defendant.

**No. CV 95–490 TUC JMR.**

United States District Court,
D. Arizona.

Aug. 15, 1996.

S. Thomas Chandler, Bruce G. Macdonald, Chandler Tullar Udall & Redhair, Tucson, AZ, Lawrence G.D. Scarborough, Brown & Bain P.A., Phoenix, AZ, Raphael V. Lupo, McDermott Will & Emery, Washington, DC, Clyde F. Willian, Willian Brinks Hofer Gilson & Lione, Chicago, IL, Timothy John Reckart, Sr., Research Corporation Technologies, General Counsel Sec. & Director Legal, Tucson, AZ, for plaintiff.

Jonathan Abbott Marshall, Pennie & Edmonds, New York City, Richard M. Rollman, Gabroy Rollman & Bosse P.C., Tucson, AZ, Jon Robert Stark, Pennie & Edmonds, Menlo Park, CA, Bloor Redding, Jr., Hewlett–Packard Company, Vancouver, WA, for defendant.

## ORDER

ROLL, District Judge.

The Court has under advisement Defendant Hewlett–Packard Company's Motion to Disqualify McDermott, Will & Emery as Counsel for Plaintiff Research Corporation Technologies, Inc. For the reasons set forth below, the motion is denied.

### FACTS

This motion arises as a result of a merger of two law firms, McDermott, Will & Emery ("MW & E") and the Washington, D.C., office of Willian, Brinks, Hofer, Gilson, & Leone ("Willian Brinks").

In January 1995, Plaintiff Research Corporation Technologies, Inc. ("Research Corp.") retained four attorneys (the Lupo–Lever patent litigation team) from the Washington, D.C. office of Willian Brinks as Research Corp.'s lead counsel in connection with a contemplated patent litigation action against Hewlett–Packard Company ("Hewlett–Packard"). Throughout 1995 the Lupo–Lever team performed investigation and research leading up to the filing of the complaint in this action on August 1, 1995. The Lupo–Lever litigation team has continued as Plaintiff's lead counsel to the present.

On March 1, 1996, the Washington, D.C. office of Willian Brinks, including the Lupo–Lever team, gave notice of its planned merger with MW & E.[1] During the month of March, the Willian Brinks and MW & E attorneys performed conflicts checks to determine whether the Lupo–Lever team would be free to represent Research Corp. in this action following the merger. The attorneys made the determination that they would be able to do so. Thus, effective April 1, 1996, the Lupo–Lever litigation team became

affiliated with the MW & E firm, and Research Corp. officially became a client of MW & E.

From 1979 to June 1995 (primarily in the mid–1980s and 1992–93), MW & E's tax section had represented Hewlett–Packard in various tax matters. The MW & E billing partner in charge of the Hewlett–Packard account, Mary Hevener, left MW & E on June 30, 1995. Ms. Hevener's departing memorandum indicated that a representative of Hewlett–Packard had stated that Hewlett–Packard would continue to work with Ms. Hevener at her new firm. The memorandum also indicated that "some [Hewlett–Packard] files may stay" with MW & E. None of these matters involved patent litigation.

On August 1, 1995, another attorney in the MW & E tax section, Stephen Wells, wrote a letter to Hewlett–Packard indicating MW & E's on-going capability to provide legal services to Hewlett–Packard even in the absence of Ms. Hevener. Mr. Wells received no response to that letter. Thereafter, in November 1995, the Hewlett–Packard account with MW & E was closed with MW & E writing off the account receivable balances for fees, costs and work in progress through June 1995. No legal work was performed for Hewlett–Packard by MW & E from June 1995 until March 1996.

On March 28, 1996, an attorney for Hewlett–Packard contacted Mr. Wells at MW & E with a discrete tax inquiry. Mr. Wells responded to that inquiry, and, on April 3, 1996, Mr. Wells and another MW & E attorney again spoke with the Hewlett–Packard attorney regarding the tax matter. The total amount of time spent by MW & E attorneys on this matter was less than three hours, and the project bore no relationship to MW & E's representation of Research Corp. Hewlett–Packard maintains that the timing of its renewed contact with the MW & E law firm was nothing more than an unfortunate coincidence.

Although Research Corp. became a client of MW & E on April 1, 1996, neither Mr. Wells nor the Lupo–Lever team learned of

---

1. Counsel for Hewlett–Packard stated at the hearing that the Hewlett–Packard tax attorneys had no notice of the impending merger until sometime in April 1996.

the other's work until mid-April. Upon realizing the conflict existed, the MW & E attorneys implemented protections against disclosure of any respective confidences.[2] In addition, MW & E contacted Hewlett–Packard, informed it of the situation regarding the representation of Research Corp., and requested Hewlett–Packard's waiver of any actual or potential conflict. Although a representative of Hewlett–Packard initially indicated that it might give a waiver, ultimately Hewlett–Packard declined to consent and has since filed this motion to disqualify MW & E as Research Corp.'s counsel.

## DISCUSSION

The Model Rules of Professional Conduct of the American Bar Association have been adopted, with some modifications, in Arizona. The rules therein have been codified at Rule 42, Rules of the Arizona Supreme Court, which sets forth the various Ethical Rules that comprise the Arizona Rules of Professional Conduct. 17A A.R.S., Sup.Ct.Rules, Rules of Professional Conduct, Rule 42. Pursuant to the Local Rules for the District of Arizona, these rules apply to attorneys permitted to practice before this Court. D.Ariz.R. 1.6(d).

In the motion to disqualify, Hewlett–Packard argues that it must be considered an existing client of MW & E, and, therefore, the actions of MW & E must be evaluated under Ethical Rule 1.7 ("ER 1.7"), the existing client standard, and MW & E must be disqualified. In response, Research Corp. argues that the former client standard, Ethical Rule 1.9 ("ER 1.9"), applies, but, if the Court determines that ER 1.7 applies, MW & E nevertheless should not be disqualified.

### Attorney–Client Relationship

■■■ An attorney-client relationship "is proved by showing that the party sought and received advice and assistance from the attorney in matters pertinent to the legal profession." *Matter of Petrie*, 154 Ariz. 295, 299, 742 P.2d 796, 800 (1987). The test is a subjective one, in which "the court looks to the nature of the work performed and to the

circumstances under which the confidences were divulged." *Alexander v. Superior Court in and for Maricopa County*, 141 Ariz. 157, 162, 685 P.2d 1309, 1314 (1984) (citing *Developments of the Law—Conflicts of Interest in the Legal Profession*, 94 Harv.L.Rev. 1244, 1321–22 (1981)). In addition, the fact that a consultation is relatively brief does not negate the establishment of the relationship. *Foulke v. Knuck*, 162 Ariz. 517, 520, 784 P.2d 723, 726 (App.1989) (citing Arizona Ethics Opinion 74–19). Another important factor is whether the client believed an attorney-client relationship existed. *Petrie*, 154 Ariz. at 300, 742 P.2d at 801; *Alexander*, 141 Ariz. at 162, 685 P.2d at 1314. "The relationship is ongoing and gives rise to a continuing duty to the client unless and until the client clearly understands, or reasonably should understand that the relationship is no longer depended on." *Petrie*, 154 Ariz. at 300, 742 P.2d at 801.

### Status of Hewlett–Packard as Present or Former Client

#### Former Client—ER 1.9

■■■ It is beyond dispute that Hewlett–Packard was previously a client of MW & E. However, the former attorney-client relationship between MW & E and Hewlett–Packard, which effectively ended in June 1995 when Ms. Hevener left the MW & E firm, is no obstacle to MW & E's current representation of Research Corp.

Ethical Rule 1.9 governs an attorney's representation of a current client against a former client, and provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

---

**2.** MW & E has also stated that Hewlett–Packard was not and will not be billed for the time spent in March/April 1996.

(b) use information relating to the representation to the disadvantage of the former client....

17A A.R.S., Sup.Ct.Rules, Rules of Professional Conduct, Rule 42, ER 1.9. As noted above, the matters in which MW & E has represented Hewlett–Packard were tax matters that did not involve patent law. Thus, the current litigation involving Research Corp. is totally unrelated to MW & E's prior representation of Hewlett–Packard. In addition, Hewlett–Packard does not contend that MW & E acquired any confidential information during its representation of Hewlett–Packard that could be used to Hewlett–Packard's detriment in the Research Corp. litigation. Furthermore, MW & E states that no information of any kind relating to Hewlett–Packard has been shared with any of the MW & E attorneys representing Research Corp., and MW & E has instituted screening procedures to prevent any such disclosures. Therefore, with regard to Hewlett–Packard's status as a former client of MW & E, ER 1.9 is no bar to MW & E's representation of Research Corp. However, this conclusion does not end the analysis.

### Present Client—ER 1.7

[5] Hewlett–Packard also argues that in addition to the previous attorney-client relationship with MW & E, the March/April 1996 contact with MW & E constituted either a continuation or a reinitiation of the relationship. Accordingly, Hewlett–Packard contends, when MW & E merged with Willian Brinks in 1996, MW & E represented Hewlett–Packard in one matter while simultaneously representing Research Corp. against Hewlett–Packard in another matter.

Although MW & E's previous representation of Hewlett–Packard had ended in June 1995, as a result of the March/April 1996 contact Hewlett–Packard once again became a client of MW & E. Also during April 1996, following completion of the merger, MW & E represented Research Corp. against Hewlett–Packard. Thus, ER 1.7, the present client standard for evaluating conflicts of interest, applies.

Arizona's formulation of ER 1.7(a) provides:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

17A A.R.S., Sup.Ct.Rules, Rules of Professional Conduct, Rule 42, ER 1.7(a). Thus, when ER 1.7(a) applies, unless ER 1.7(a)(1) and (2) are satisfied, a violation of ER 1.7 occurs.

Here, MW & E's representation of Research Corp. is clearly directly adverse to the interests of Hewlett–Packard, and ER 1.7(a) applies. While it may be arguable that ER 1.7(a)(1) is satisfied, because Hewlett–Packard did not and does not consent to MW & E's concurrent representation of Hewlett–Packard and Research Corp., ER 1.7(a)(2) is not satisfied. Therefore, a violation of ER 1.7 has occurred.

### Effect of Violation of ER 1.7

Hewlett–Packard argues that a violation of ER 1.7 results in automatic disqualification. Research Corp. disagrees.

■ The burden is on the moving party to show "sufficient reason why an attorney should be disqualified from representing [a] client," and, "[w]henever possible the courts should endeavor to reach a solution that is least burdensome upon the client or clients." *Alexander*, 141 Ariz. at 161, 685 P.2d at 1313. Disqualification can result in increased expenses, delay in resolution of the proceedings and deprivation of choice of counsel. *See SWS Financial Fund A v. Salomon Bros. Inc.*, 790 F.Supp. 1392, 1400 (N.D.Ill.1992). Thus, "[o]nly in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of [an] opponent." *Alexander*, 141 Ariz. at 161, 685 P.2d at 1313.

■ The purposes behind the ethical rules favor an approach which does not automatically require disqualification. As noted by the court in *SWS Financial Fund*, ER

1.7(a)[3] has two purposes: (1) it protects against disclosure of client confidences, especially where the matters are substantially related, and (2) it safeguards loyalty within the attorney-client relationship. 790 F.Supp. at 1401. Here, the parties concede the representations are separate and distinct, and, although some breach of the duty of loyalty to Hewlett–Packard has occurred, Hewlett–Packard cannot reasonably argue that its "expectations of loyalty were so cavalierly trampled that disqualification is warranted as a sanction." *Id.* at 1402.

Hewlett–Packard relies heavily on *Unified Sewerage Agency of Washington County, Oregon v. Jelco, Inc.,* 646 F.2d 1339 (9th Cir. 1981), to support its position that automatic disqualification is required. In *Jelco,* a case involving concurrent client representation, the court stated that "[t]o avoid disqualification under DR 5–105(B), an attorney must satisfy DR 5–105(C)'s two conditions."[4] Both clients must consent, and it must be obvious that the attorney can adequately represent the interests of both clients. *Id.* at 1345. Hewlett–Packard cites this statement as proof that a per se rule of disqualification exists in the Ninth Circuit.[5] However, although the *Jelco* panel did refer to the two requirements of DR 5–105(C), *Jelco* did not decide whether a violation of the rule results in automatic disqualification. In addition, the Ninth Circuit's review of the denial of the motion to disqualify in *Jelco* for "abuse of discretion" indicates that the Ninth Circuit has not adopted a per se rule of disqualification. The Ninth Circuit stated that the standard of review is abuse of discretion because "the primary responsibility for controlling the conduct of lawyers practicing before the district court lies with that court...." *Jelco,* 646 F.2d at 1351. Application of a per se rule of disqualification would require no exercise of discretion.

Other courts have concluded that automatic disqualification does not result every time a lawyer or law firm concurrently represents clients, one of whom is proceeding adversely against the other, without the consent of both clients. *See, e.g., Picker Int'l, Inc. v. Varian Assocs., Inc.,* 869 F.2d 578, 581 (Fed.Cir. 1989) (applying law of the Sixth and Tenth Circuits); *EEOC v. Orson H. Gygi Co., Inc.,* 749 F.2d 620 (10th Cir.1984) (recognizing control of attorneys' conduct in trial litigation is matter of judicial discretion); *Bottaro v. Hatton Assoc.,* 680 F.2d 895 (2d Cir.1982) (recognizing "restrained approach" applied by the Second Circuit whereby disqualification results only if the presence of particular counsel will taint the proceedings, although applying different ethical rule) (citing *Board of Educ. of City of New York v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979)). In *Picker,* for example, where the court considered a violation of DR 5–105, which is substantially similar to ER 1.7, the court stated:

> Although *the sanction of disqualification does not follow automatically from a violation of DR 5–105, i.e. no per se rule of disqualification, see Bodily v. Intermountain Health Care Corp.,* 649 F.Supp. 468, 477 (D.Utah 1986), a court may disqualify firms if it finds a violation of DR 5–105 and concludes that the sanction of disqualification should apply because the particular facts in the case warrant such action.

869 F.2d at 581 (Fed.Cir.1989) (emphasis added). *See also Parkinson v. Phonex Corp.,* 857 F.Supp. 1474, 1476 (D.Utah 1994) ("Although the Tenth Circuit has not directly addressed application of a per se rule of disqualification in simultaneous or concurrent representations, *EEOC v. Orson H. Gygi, Co., Inc.,* 749 F.2d 620 (10th Cir.1984), confirms that the handling of such matters ... is a matter within the trial judge's discretion."); *SWS Financial Fund A v. Salomon Bros. Inc.,* 790 F.Supp. 1392 (N.D.Ill.1992)

3. The court in *SWS Financial Fund* applied ER 1.7(a) of the Rules of Professional Conduct for the Northern District of Illinois which is virtually identical to the formulation of ER 1.7(a) at issue in the present case.

4. DR 5–105 is substantially similar to ER 1.7.

5. Hewlett–Packard also points out that some courts in the Ninth Circuit have applied a per se rule. *See Lemelson v. Apple Computer, Inc.,* 28 U.S.P.Q.2d 1412 (BNA), 1993 WL 556452 (D.Nev.1993) (U.S. Magistrate Judge Atkins); *Teradyne, Inc. v. Hewlett–Packard Co.,* 20 U.S.P.Q.2d 1143 (BNA), 1991 WL 239940 (N.D.Cal.1991).

("Salomon Brothers has assumed that disqualification automatically follows from a finding that a law firm has violated a conflict of interest rule. That assumption is not correct.") *But see, e.g., British Airways v. Port Authority of N.Y. and N.J.*, 862 F.Supp. 889 (E.D.N.Y.1994) (applying per se rule); *Lemelson v. Apple Computer, Inc.*, 28 U.S.P.Q.2d 1412 (BNA), 1993 WL 556452 (D.Nev.1993) (U.S. Magistrate Judge Atkins) (applying per se rule); *Teradyne, Inc. v. Hewlett–Packard Co.*, 20 U.S.P.Q.2d (BNA) 1143, 1991 WL 239940 (N.D.Cal.1991) (presumably applying per se rule).

In determining whether disqualification is required, courts have examined various factors, including (1) the nature of the ethical violation, (2) the prejudice to the parties, including the extent of actual or potential delay in the proceedings, (3) the effectiveness of counsel in light of the violations, and (4) the public's perception of the profession. *See Parkinson*, 857 F.Supp. at 1476. In addition, whether or not a motion to disqualify has been used as a tactical device or a means of harassment should also be considered. *See SWS Financial Fund*, 790 F.Supp. at 1401 (quoting *Bobbitt v. Victorian House, Inc.*, 545 F.Supp. 1124, 1128 (N.D.Ill.1982)).

Because the Ninth Circuit has not expressly adopted a rule of automatic disqualification, and based on the well-reasoned decisions disfavoring a rule requiring automatic disqualification, the Court finds that the better rule is to consider the facts and circumstances of each case, including the particulars of the ethical violation itself, in determining whether the harsh sanction of disqualification is warranted.

As to the MW & E conflict, the nature of the ethical violation is not egregious. Although the violation should not have occurred, it was inadvertent. As soon as the respective MW & E attorneys realized that a problem existed, approximately two weeks after the concurrent representation occurred, they took precautions to safeguard against disclosure of any confidences. Moreover, disqualification would result in more prejudice to Research Corp. than any potential prejudice to Hewlett–Packard resulting from denial of disqualification. The Lupo–Lever litigation team has spent nineteen months preparing this case. Much of that time would have to be duplicated by substitute counsel in the event of disqualification, notwithstanding local counsel's expertise in the area of patent litigation. In addition, granting the motion would result in Research Corp.'s losing its chosen counsel and would delay the ultimate conclusion of these proceedings. In contrast, the prejudice to Hewlett–Packard is minimal.

Perhaps most importantly, nothing indicates that any confidential information related to the pending action has been received by the Lupo–Lever litigation team as a result of Hewlett–Packard's brief March/April 1996 contacts with the MW & E tax attorneys. Counsel for Hewlett–Packard was invited to submit under seal for in camera inspection any documentation showing that Research Corp. has gained an advantage against Hewlett–Packard as a result of MW & E's representation of Hewlett–Packard. Although Hewlett–Packard did submit a response to the Court's invitation, Hewlett–Packard did not come forward with any showing that Research Corp. has gained an advantage in the present patent litigation as a result of any past or present representation of Hewlett–Packard by MW & E.

Finally, the Court perceives neither any reduction in the effectiveness of counsel as a result of the violation, nor any negative effects on the public's perception of the profession. The situation presented here cannot reasonably be viewed as MW & E dropping Hewlett–Packard "like a hot potato" in favor of a more lucrative client. *Picker Int'l, Inc. v. Varian Assocs., Inc.*, 670 F.Supp. 1363, 1365 (N.D.Ohio 1987), *aff'd*, 869 F.2d 578 (Fed.Cir.1989).

Therefore, in consideration of all of the above, the Court finds that disqualification of MW & E as Research Corp.'s counsel under the facts and circumstances presented here would be inappropriate.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Hewlett–Packard Company's Motion to Disqualify McDermott, Will & Emery as Counsel for Plaintiff Research Corporation

Technologies, Inc. filed on June 21, 1996 is **DENIED.**