Catherine BOSKOFF, Plaintiff,

v.

Thomas YANO, et al., Defendants.

No. Civ. 97–01203 ACK.

United States District Court,
D. Hawaii.

Oct. 27, 1998.

---

Richard L. Rost, Rost & Geiger, Wailuku, Maui, HI, for Catherine Boskoff, plaintiff.

Andrew D. Smith, Greeley Walker & Kowen, Honolulu, HI, for Thomas Yano, defendant.

Raymond Duvauchelle, Koloa, HI, defendant pro se.

Harvey E. Henderson, Tam O'Connor Henderson Taira & Yamauchi, Honolulu, HI, for Raymond Duvauchelle, defendant.

Calvin E. Young, Steven L. Goto, Ayabe Chong Nishimoto Sia & Nakamura, Honolulu, HI, for Aaron Kakinami, defendant.

## ORDER DENYING DEFENDANTS KAKINAMI AND DUVAUCHELLE'S MOTION FOR SUMMARY JUDGMENT

KAY, Chief Judge.

### BACKGROUND

On or about May 8, 1990, Kenneth Boskoff, dba Boskoff Construction Company, entered into a construction contract with Ana Koa Corporation to build a new residence on an undeveloped piece of property in Koloa, Kauai. In April, 1991, toward the end of the project, Boskoff Construction was ordered off the property by Jim Clement, President of Ana Koa Corporation. Pursuant to the construction contract, efforts were made to arbitrate the dispute. On June 1, 1991, Plaintiff Catherine Boskoff and her husband, Kenneth Boskoff, separated. Kenneth Boskoff moved to Maui and there was no further communication between Plaintiff and Kenneth Boskoff until Plaintiff was served with the Complaint in the Ana Koa lawsuit.

On October 16, 1991, Harold Bronstein, Esq., caused the Complaint in the Ana Koa lawsuit to be filed. The Ana Koa lawsuit was instigated against Kenneth A. Boskoff and Catherine Boskoff, individually and dba Boskoff Construction. A few days later, on or about October 23, 1991, Plaintiff was served with a copy of the Summons and Complaint.

Although Plaintiff initially accepted service on behalf of herself and her then-estranged husband, the putative service upon Kenneth Boskoff was found to be ineffective and was set aside by the Intermediate Court of Appeals. Thus, there has been a full and final adjudication that Kenneth Boskoff, dba Boskoff Construction, was not obligated to respond to the unserved Complaint.

After accepting service of the Complaint on her own behalf, Plaintiff telephoned Defendant Raymond Duvauchelle. In that conversation, Duvauchelle informed Plaintiff that he could not represent her interests in the Ana Koa lawsuit inasmuch as he was already representing her estranged husband, Kenneth Boskoff, dba Boskoff Construction, and there was a potential conflict of interest.

Acting on Duvauchelle's suggestion that she consider contacting Thomas Yano to represent her separate interests, Plaintiff telephoned Yano on the same day, October 23, 1991. Plaintiff retained Yano to represent her interests in the Ana Koa lawsuit. The subsequent factual developments in this case are in dispute.

On September 15, 1997, Plaintiff filed suit against Defendants Thomas Yano, Raymond Duvauchelle, and Aaron Kakinami, claiming legal malpractice, negligence, misrepresentation, breach of contract, and tortious breach of contract. On June 1, 1998, Kakinami filed the instant motion for summary judgment. Duvauchelle filed his joinder to Kakinami's motion on June 1, 1998. On October 1, 1998, Plaintiff filed her opposition to Kakinami's motion. Yano filed his opposition to the motion on October 1, 1998 as well. On October 8, 1998 Kakinami filed his reply.

## STANDARD OF REVIEW

### I. *Motion for Summary Judgment*

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *See T.W. Elec. Serv.*, 809 F.2d at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *See British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics*, 818 F.2d at 1468 (emphasis in original) (citing *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *See T.W. Elec. Serv.*, 809 F.2d at 630–31.

## DISCUSSION

In deciding a motion for summary judgment, the Court must first review what claims a plaintiff has alleged in its complaint. Here, Plaintiff has not clearly set out her claims for relief in a separate section of her Complaint, but rather has pleaded these claims in the midst of her factual assertions. Thus, the Court must attempt to dissect Plaintiff's Complaint to determine exactly what she is alleging. Accordingly, it appears to the Court that Plaintiff has alleged claims for legal malpractice, negligence, misrepresentation, breach of contract, and tortious breach of contract. The Court will address these issues in turn.

### I. *Legal Malpractice*

■ In her Complaint, Plaintiff alleges that legal malpractice was committed by Defendants Duvauchelle and Kakinami. *See* Complaint, at ¶¶ 16, 19.[1] As a preliminary matter, the Court notes that the Ninth Circuit has held that "negligence is the essence of a malpractice action." *Breda v. Scott*, 1 F.3d 908, 909 (9th Cir.1993); *Peterson v. Kennedy*, 771 F.2d 1244, 1259 (9th Cir.1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986). Thus, any claim for negligence alleged in Plaintiff's complaint is necessarily incorporated into the ensuing discussion on legal malpractice.

■ A claim for legal malpractice requires a plaintiff to prove four elements: (1) the existence of an attorney-client relationship; (2) the existence of a duty on the part of a lawyer; (3) breach of that duty; and (4) damages flowing from the breach. *Damron v. Herzog*, 67 F.3d 211 (9th Cir. 1995), *cert. denied*, 516 U.S. 1117, 116 S.Ct. 922, 133 L.Ed.2d 851 (1996).

■ In his motion, Kakinami argues that no attorney-client relationship was ever established between Duvauchelle and Plaintiff, and therefore, Duvauchelle cannot be liable for malpractice. To determine whether an attorney-client relationship existed, the Court must look to the nature of the interaction between the parties. According to the Ninth Circuit:

> An attorney-client relationship is contractual and consensual, and such a relationship can be formed only with the consent of the attorney and individual seeking representation. The consent of the parties must be personal and must flow between the particular individuals, and a finding of an attorney-client relationship should not be based on the acts of an intermediary, because such a finding would be contrary to the fundamental principles of attorney-client representation.

*In re Johore Investment Company*, 157 B.R. 671, 676 (D.Haw.1985) (citations omitted). Put simply, "[a]n attorney-client relationship is formed when an attorney renders advice directly to a client who has consulted him seeking legal counsel." *Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*, 991 F.2d 1501, 1505 (9th Cir.1993); *see also Research Corp. Technologies v. Hewlett–Packard Co.*, 936 F.Supp. 697, 700 (D.Ariz.1996).

■ Several factors are relevant in determining whether or not an attorney-client relationship has been formed. For example, "[t]he court may look to the intent and conduct of the parties to determine whether the relationship was actually formed." *Waggoner* at 1505. One factor to be considered is "whether the client believed an attorney-client relationship existed." *Research Corp. Technologies*, 936 F.Supp. at 700. However, the belief "must be objectively reasonable under the totality of the circumstances, which includes consideration of factors such as intent of alleged client and attorney and payment arrangements." *Essex Chemical Corp. v.*

---

1. Plaintiff also alleges that Defendant Yano committed legal malpractice. The extent of Yano's liability, if any, is not discussed here.

*Hartford Accident & Indemnity Co.,* 993 F.Supp. 241, 253 (D.N.J.1998).

Kakinami argues that there was no attorney-client relationship between Plaintiff and Duvauchelle. It is undisputed that when Plaintiff contacted Duvauchelle after being served with the complaint, Duvauchelle informed Plaintiff that he would not be able to represent her. Indeed, the relevant portion of Plaintiff's own deposition testimony reads as follows:

> Q: Is it your position that Mr. Duvauchelle was acting as your attorney in the lawsuit of Ana Koa Corporation versus Boskoff?
>
> A: It's my position that he was my husband's attorney in a joint defense in conjunction with my attorney in a defense.

Def.'s Sep. and Concise Statemt. of Facts, Exh. A at 268.

> Q: And Mr. Duvauchelle told you then that he felt that he could not represent you personally and that you should get another lawyer?
>
> A: Yes.
>
> \*     \*     \*     \*     \*     \*
>
> Q: And the next day you signed a retainer, you personally signed a retainer agreement which we have seen today, with Mr. Yano?
>
> A: Yes.
>
> Q: It is also correct that you personally never signed any retainer agreement with Mr. Duvauchelle; isn't that correct?
>
> \*     \*     \*     \*     \*     \*
>
> A: Yes.

*Id.* at 279.

> Q: And you looked upon Mr. Yano as your attorney?
>
> A: Yes.
>
> Q: And his job, in your view, was to protect your interests in this lawsuit?
>
> A: Yes.

*Id.* at 283.

Plaintiff herself admits that she considered Yano to be her attorney. Furthermore, Kakinami argues that the usual "indicia" of an attorney-client relationship were absent between Plaintiff and Duvauchelle. For example, Plaintiff signed a Legal Services Agreement with Yano, but did not sign any such agreement with Duvauchelle. Similarly, Yano billed Plaintiff for his professional legal services, whereas Duvauchelle did not. Finally, Plaintiff provided Yano with a copy of the Complaint in the Ana Koa lawsuit, but did not provide a copy to Duvauchelle. Relying on the foregoing, Kakinami argues that there was no attorney-client relationship between Plaintiff and Duvauchelle.

■ However, the mere fact that Plaintiff did not directly employ Duvauchelle as her attorney does not preclude a finding that an attorney-client relationship was nonetheless formed between them, and that Duvauchelle subsequently committed legal malpractice. Indeed, "[t]here are certain situations ... in which fiduciary obligations or an implied professional relationship may arise, even in the absence of an *express* attorney-client relationship." *Johore,* 157 B.R. at 676 (emphasis added).

■ One example of such a situation is when an attorney forms an "association" with another attorney in a case. The association of other counsel usually involves a division of responsibility for various aspects of the client's representation. If the client's consent is not obtained for an association, then vicarious liability is the rule. *Floro v. Lawton,* 187 Cal.App.2d 657, 671, 10 Cal.Rptr. 98 (1960). However, if the client consents, then the associated attorney is also personally liable for malpractice. *See* Mallen & Smith, *Legal Malpractice* § 5.9 at 36 (4th Ed.1996) (*citing Scott v. Francis,* 100 Or.App. 392, 786 P.2d 1269 (1990), *rev'd on other grounds,* 314 Or. 329, 838 P.2d 596 (1992); *Neel v. Magana, Ol-*

*ney, Levy, Cathcart and Gelfand,* 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421 (1971)).

■ Here, it is unclear as to whether an association was formed between Yano and Duvauchelle, and if so, the extent of Plaintiff's consent to such an association. In his motion for summary judgment, Kakinami asserts that Duvauchelle owed no duty whatsoever to Plaintiff and that any claims for legal malpractice must be resolved in his favor. By contrast, Yano alleges that there was an express agreement between himself and Duvauchelle. In his deposition testimony, Yano stated:

Q: I'd like you to tell me, since one of the cross-claim defendants is Mr. Duvauchelle, I would like you to tell me what you believe were his wrongful acts and/or omissions which proximately caused any damages or injuries to the plaintiff.

A: Ray Duvauchelle and I, during our initial discussion, agreed that I would assist him and that he would take care of the monitoring of the case. When I first came in, it was my understanding he was still in communication with Harold Bronstein about arbitration.

\* \* \* \* \* \*

But overall, Ray was to be the only contact with Harold Bronstein. Ray was to monitor the Court files and notify me of any new pleadings, especially if there was any notice of entry of default, because one of the other defenses that we were exploring was whether or not Kate was a proper party.

Pl.'s Mem. in Opp. to Mot. for Sum. J., Exh. D at 15–16. Yano also characterizes Plaintiff's legal representation as "joint" between himself and Duvauchelle. *See id.,* Exh. L. at 4. Similarly, Plaintiff's deposition testimony reflects her belief that Yano and Duvauchelle were working together in a "joint defense." Def.'s Sep. and Concise Statemt. of Facts, Exh. A at 268. Furthermore, there is evidence that Plaintiff paid $13,000.00 to Duvauchelle, at least partly as payment for legal services relat-

ing to her defense in the Ana Koa lawsuit. *See* Pl.'s Mem. in Opp. to Mot. for Sum. J., Exh. A at ¶ 6. Finally, Duvauchelle himself admitted in his deposition testimony that there was at least some form of an agreement between himself and Yano:

Q: Are you denying that that is the arrangement that you and he had?

A: The arrangement was he asked me if I would check the court file.

Q: Check it for what?

A: To see if any other documents were filed.

Q: Including—

A: To see.

Q:—a possible entry of default?

A: Entry of default.

Q: And you agreed to do that?

A: Yeah. I said I'd check periodically.

Pl.'s Mem. in Opp. to Mot. for Sum. J., Exh. C at 78.

Q: Did you agree to keep him advised?

A: Advised if I got anything new.

Q: And you agreed to keep him advised of any notice of entering of a default?

A: If I got anything, yes.

\* \* \* \* \* \*

■ Q: Did you agree to provide Mr. Yano with a copy of Ken's deposition?

A: It's possible that I might have done that.

Q: Did you agree to provide him with a copy of any other relevant pleadings or documents?

A: In the sense of if I filed them, yes I would have.

*Id.* at 125–26.

Q: (By Mr. Rost) So you did agree to call and ask Mr. Bronstein about settling or arbitrating the case?

A: Yes.

*Id.* at 127. Accordingly, the Court holds that there is a genuine issue of material fact as to whether Duvauchelle and Yano agreed to associate in this case, and conse-

quently, whether an attorney-client relationship arose between Duvauchelle and Plaintiff as a result.[2] Furthermore, even if it were determined that no attorney-client relationship arose between Plaintiff and Duvauchelle, there is still a genuine issue of material fact as to whether Plaintiff could recover as an intended third-party beneficiary of the agreement between Duvauchelle and Yano.

▇ Defendant also argues that Plaintiff's claims for legal malpractice must fail because an attorney has no duty to his client's adversary. *See Myers v. Cohen*, 5 Haw.App. 232, 245–46, 687 P.2d 6, *rev'd on other grounds*, 67 Haw. 389, 688 P.2d 1145 (1984). However, there is a genuine issue of material fact in this case as to whether the interests of the two parties were truly adverse.

As noted above, it is undisputed that Duvauchelle declined to represent Plaintiff when she initially consulted him after being served with the complaint in the Ana Koa lawsuit. Duvauchelle's reason for doing so was his belief that a potential conflict existed between Plaintiff and Kenneth Boskoff. However, the existence of this conflict is in dispute. Kakinami argues that the "joint defense," if any, was riddled with conflicts and competing concerns between Plaintiff and Kenneth Boskoff due to their impending divorce and the disparate relationship of how the marital property was held. According to Kakinami, Kenneth Boskoff was demanding one-half of Plaintiff's interest in the marital residence and trying to keep Plaintiff in the litigation, whereas Plaintiff was attempting to distance herself from Boskoff Construction as an improper party to the lawsuit in order to protect her interest in the residence from both Ana Koa and Kenneth Boskoff. These facts, according to Kakinami, created an "adversarial" relationship between Plaintiff and Kenneth Boskoff.

However, Plaintiff and Kenneth Boskoff were on the same side of the Ana Koa lawsuit, and Plaintiff's deposition testimony indicates that she was uncertain as to why she and her husband were considered "adverse":

Q: But we're talking Duvauchelle here. Mr. Duvauchelle said, wait a minute, we've got a conflict here?

A: Yeah. I don't know the exact reason.

Q: You said you tried to find out what that conflict was, and that led to my question where somehow your interests and the interests of Kenny and/or Boskoff Construction are adverse.

A: Because of the separation.

\* \* \* \* \* \*

Q: Where is the adverse position?

A: I'm not sure.

Def. Thomas Yano's Mem. in Opp. to Mot. for Sum. J., Exh. D. at 85–86. Likewise, Defendant Yano's deposition testimony indicates that he did not perceive the parties to be "adversaries" in the Ana Koa lawsuit:

Q: At any point. Did they ever have a conflict? and when I use the term "conflict," I don't mean-let me start over again. I understand from your testimony that Ken and Kate didn't always see eye to eye on how the defense of Ana Koa should progress. Is that correct?

A: I can say that they were, and I think they both made sincere efforts to coordinate their efforts, but because they were living apart there was this communication gaps and things.

Q: Right. So is the answer to my question yes or no, they did have, not always see eye to eye on how the Ana Koa case should be defended or they did not always, or they did see eye to eye?

2. In his reply brief, Defendant Kakinami argues for the first time that Yano intentionally and deliberately refrained from filing an Answer in the Ana Koa case for tactical reasons. According to Hawaii Local Rule 7.4, "[a]ny arguments raised for the first time in the reply shall be disregarded." LR 7.4. Accordingly, this argument shall be disregarded without discussion.

A: I think they saw eye to eye. Their problems arose more in the divorce thing, I think, unless there's a line to be fudged there. I think the conflicts were more in the, you know, who gets what in the divorce. Early on they, they said they had, you know, they understood they had a common enemy in Ana Koa, something to that effect, so.

*Id.,* Exh. B at 87–88.

Furthermore, as already discussed, there is evidence which indicates that Duvauchelle and Yano might have agreed to associate in the Ana Koa lawsuit, and thus it can hardly be said that their status as "adversaries" is undisputed. This is further supported by Plaintiff's contention that she paid $13,000.00 to Duvauchelle for legal services, at Yano's request. *See* Pl.'s Mem. in Opp. to Mot. for Sum. J., Exh. A at ¶ 6. Because a genuine issue of fact exists as to whether an attorney-client relationship was formed, and because the characterization of the parties as "adverse" is in dispute, this issue is not appropriate for summary adjudication. Therefore, Kakinami's request for summary judgment is DENIED with respect to the claims of legal malpractice and negligence.

## II. *Misrepresentation*

Plaintiff's Complaint also alleges misrepresentation by Defendant Duvauchelle. *See* Complaint, ¶ 18. Misrepresentation can be either negligent or intentional. The elements of intentional misrepresentation are: (1) a false statement; (2) knowledge of the statement's falsity; (3) intent to induce reliance; (4) justifiable reliance; (5) resulting damages. *See Cicone v. URS Corp.,* 183 Cal.App.3d 194, 227 Cal.Rptr. 887, 890 (1986). Negligent misrepresentation is virtually identical, except that the second prong does not require knowledge of the falsity, but rather, the absence of a reasonable ground for believing it to be true. *See Shaffer v. Earl Thacker Co., Ltd.,* 6 Haw. App. 188, 716 P.2d 163 (1986).

To support her allegations of misrepresentation, Plaintiff, inter alia, points to Duvauchelle's own testimony. Duvauchelle's deposition testimony reads, in relevant part:

Q: Did you ever tell Tom Yano that you had asked Bronstein for an extension of time to answer the complaint?

\* \* \* \* \* \*

A: I may have.

\* \* \* \* \* \*

Q: Why would you have told Tom that you had asked Bronstein for an extension when that wasn't true?

A: I don't know why it turned out that way, actually.

Pl.'s Mem. in Opp. to Mot. for Sum. J., Exh. C at 327. It is apparent from Duvauchelle's own testimony that he does not dispute the possibility that he may have misrepresented material facts to Yano.

In his motion, Kakinami does not address this part of Duvauchelle's testimony. Instead, Kakinami appears to rely on the fourth element of misrepresentation, "justifiable reliance," in opposing Plaintiff's claim for misrepresentation. Specifically, Kakinami argues that Yano had no right to rely on Duvauchelle's representations, because there is no right to rely on the statement's of an adversary's attorney. However, as discussed above, there is a genuine dispute as to whether the parties were truly *adverse* to one another. Furthermore, an association between Yano and Duvauchelle, if proven, would suggest that such reliance was justified. Since Kakinami does not attempt to dispute Duvauchelle's making of the false statements, and since there is a genuine dispute as to whether Yano was justified in relying on those statements, Kakinami's motion for summary judgment as to Plaintiff's claim of misrepresentation is DENIED.

## III. *Breach of Contract*

Plaintiff also alleges breach of contract and tortious breach of contract in

her Complaint. *See* Complaint, ¶¶ 17, 24, 25. In Paragraph 17 of the Complaint, Plaintiff states, "Defendant Yano breached his contract to provide appropriate legal services to Plaintiff ..." Complaint, ¶ 17. Likewise, Plaintiff asserts in her complaint that "Defendants Duvauchelle and Kakinami breached their agreement made with Plaintiff to provide legal services to Plaintiff for Plaintiff's benefit in the defense of aforesaid civil action. Said breach was willful, wanton, reckless, so as to constitute a tortious breach of contract." Complaint, ¶ 24. Plaintiff also alleges that Yano's breach was tortious as well. *See* Complaint, ¶ 25.

The contractual allegations in Plaintiff's complaint appear to stem from the alleged agreement, if any, between Duvauchelle and Yano. Indeed, claims for breach of contract and legal malpractice are often intertwined. *See Neel*, 6 Cal.3d at 181, 98 Cal.Rptr. 837, 491 P.2d 421 ("legal malpractice constitutes both a tort and a breach of contract."). As such, Plaintiff's claims for breach of contract fall within her allegations of legal malpractice.

Plaintiff has produced evidence of an agreement between Yano and Duvauchelle, and has alleged that she paid $13,000.00 to Duvauchelle for legal services. However, as discussed above, there is a dispute as to what agreement, if any, was reached between Yano and Duvauchelle. Consequently, summary adjudication on the issue of whether such an agreement was breached is inappropriate. Likewise, the determination of a tortious breach of said contract is inappropriate as well. Accordingly, summary judgment on the issue of a contract breach, ordinary or tortious, is DENIED.

### V. *Yano's Cross–Claim Against Kakinami and Duvauchelle*

 In the instant motion, Kakinami also moves for summary judgment on Yano's cross-claim against him. In his cross-claim, Yano alleges that any injuries suffered by Plaintiff were proximately caused by Duvauchelle and Kakinami, and that he should be relieved from liability. Stated differently, his cross-claim against Duvauchelle and Kakinami is essentially one for contribution and/or indemnity should he be found liable for Plaintiff's injuries. As genuine issues of fact currently exist as to all of the claims contained in Plaintiff's Complaint, the Court certainly cannot summarily adjudicate Yano's cross-complaint at this stage. Accordingly, Kakinami's motion for summary judgment as to Yano's cross-claim is DENIED.

### CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant Kakinami's motion for summary judgment.

IT IS SO ORDERED.