4 P.3d 1109

OFFICE OF DISCIPLINARY
COUNSEL, Petitioner,

v.

Mark Matthew CUSMANO, Respondent.

No. 22770.

Supreme Court of Hawai'i.

Aug. 1, 2000.

Brian C. Means (Assistant Disciplinary Counsel, Office of Disciplinary Counsel), on the petition.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, JJ., and Circuit Court Judge IBARRA, Assigned by Reason of Vacancy.

PER CURIAM.

On November 10, 1999, Brian C. Means, Trustee of the files of Respondent Mark Matthew Cusmano [hereinafter, Means or "the trustee"],[1] petitioned this court, pursuant to Rule 2.20 of the Rules of the Supreme Court of the State of Hawai'i (RSCSH), for instructions or orders concerning how to comply with a circuit court order that he execute a stipulation for dismissal and secure the signatures of Cusmano's clients on settlement documents. We granted the petition, noted that the issue raised by the petition had not been addressed by a published opinion, that such an opinion would benefit the courts, the bar, and the public, and that an opinion would be filed at a later date. This is that opinion.

We hold that trustees, appointed pursuant to RSCSH Rule 2.20, are not authorized or empowered to intervene in the legal affairs of the clients whose files the trustees are appointed to inventory, unless ordered to do so by this court. *See* RSCSH Rule 2.20(c)(2)(vi). In addition, we note that when the trustee is the Disciplinary Counsel or an Assistant Disciplinary Counsel, the Trustee is specifically prohibited from engaging in the practice of law other than as Disciplinary Counsel or Assistant Disciplinary Counsel. *See* RSCSH Rule 2.6(a).[2]

## I. *BACKGROUND*

The events that precipitated the trustee's petition for instructions or orders arose from civil suits filed in the first circuit court.[3] In the suits, James P. Dandar, Esq., represented the defendant Carole Takahashi. Cusmano had filed the personal injury actions on behalf of his clients, plaintiffs Sarah and Troy Pennington (hereinafter, "the Penningtons").

During the course of the Penningtons' lawsuits, Dandar alleged that on or before June 23, 1999, Cusmano had settled the actions. On June 23, 1999, Dandar transmitted settlement documents and two checks to Cusmano, in the total amount of $25,000.00, from State Farm Mutual Automobile Insurance Company (State Farm). Each State Farm check was made jointly payable to the Penningtons and Cusmano. Dandar's June 23, 1999 cover letter to Cusmano stated that:

> You are not authorized to negotiate the two enclosed drafts until such a time as you and your clients have executed the enclosed Settlement Agreement without amendments or changes and you have executed both Stipulations for Dismissal without amendments or changes and all three documents have been returned to our office.

Cusmano deposited Takahashi's State Farm settlement checks into his client trust account on July 23, 1999. Sometime thereafter, Cusmano converted the Penningtons' entire settlements to his own use and benefit, abandoned his practice of law, and left the State of Hawai'i. We disbarred Cusmano by order filed January 5, 2000.

Prior to Cusmano's disbarment, on September 2, 1999, we appointed Assistant Disci-

---

**1.** Pursuant to Rule 2.20 of the Rules of the Supreme Court of the State of Hawai'i, Assistant Disciplinary Counsel Brian Means was appointed trustee to inventory Cusmano's files.

**2.** RSCSH Rule 2.6(a) provides that "[c]ounsel shall not engage in private practice, except that

the Board may agree to a reasonable period of transition after appointment."

**3.** *Sarah Pennington v. Carole Takahashi, et al.,* Civ. No. 97–4755–11, and *Troy Pennington v. Carole Takahashi, et al.,* Civ. No. 97–4757–11.

plinary Counsel Means to serve as trustee to inventory Cusmano's client files. The order directed the trustee to assume all of the duties enumerated in RSCSH Rule 2.20(c) and to perform such other duties as this court might order.

On September 8, 1999, the trustee notified all state and federal judges in Hawai'i that Cusmano had abandoned his law practice and had left the State of Hawai'i and that Means had been appointed trustee. During the same month, the trustee began a search to locate the Penningtons.

By letter dated September 13, 1999, Dandar's paralegal advised the trustee regarding the settlement agreement and the two State Farm checks. The letter further advised the trustee that Cusmano had cashed the checks.

On October 7, 1999, Dandar, on behalf of Takahashi, moved to enforce the settlement (the Takahashi motion) in the Penningtons' lawsuits. Dandar asked: (1) that the Takahashi motion be granted; (2) that the circuit court, on behalf of the Penningtons and Cusmano, execute the settlement documents and dismiss the Pennington lawsuits; and (3) for such other relief as the circuit court might deem just and equitable. The circuit court scheduled the Takahashi motion to be heard on October 29, 1999. A copy of the motion was served on the trustee on October 11, 1999.

On October 14, 1999, Sarah Pennington telephoned the trustee in response to a message left by the trustee at Troy Pennington's business telephone number. Sarah Pennington informed the trustee the Penningtons had not agreed to settle the lawsuits, had not signed any settlement documents, and had not been paid any of the settlement proceeds.

The trustee's RSCSH Rule 2.20 appointment did not authorize him to represent the Penningtons or any other of Cusmano's clients, and the trustee did not attend the October 29, 1999 hearing on the Takahashi motion.

On November 2, 1999, Dandar's office notified the trustee that the circuit court had granted the Takahashi motion. Dandar forwarded a copy of a proposed order granting the motion to enforce settlement (proposed order), for the trustee's approval as to form. In addition to granting the Takahashi motion, the proposed order directed the trustee "to execute a Stipulation for Dismissal with Prejudice of the above-referenced consolidated matters" and to "effectuate all efforts by any and all means to obtain the signatures of the PENNINGTONS on the Joint Tortfeasor Release, Indemnification and Settlement Agreement[.]"

The trustee confirmed with Dandar's office that the proposed order correctly stated the circuit court's ruling on the Takahashi motion.

On November 10, 1999, the trustee petitioned this court for instructions or orders concerning how to comply with the circuit court's order. On November 18, 1999, we directed that any order of the circuit court requiring the trustee to act on behalf of Cusmano's clients be vacated, ordered the trustee to file a copy of our order in the circuit court's record of civil cases, and ordered the trustee to provide a copy of our order to the judge or judges presiding in those cases. We enjoined the circuit court from entering any order requiring the trustee to act on behalf of Cusmano's clients. We also directed the trustee to bring any further requests of the circuit court to the attention of this court and to continue to inform Cusmano's clients to seek other counsel regarding their legal matters.

## II. DISCUSSION

RSCSH Rule 2.20 generally governs the appointment of trustees. RSCSH Rule 2.20(a)[4] sets forth grounds for the appoint-

---

4. RSCSH Rule 2.20(a) provides:

Whenever an attorney has been transferred to inactive status because of incapacity or disability, or disappears or dies, or has been suspended or disbarred and has not complied with Rule 2.16, or there is other good cause exhibiting an attorney's inability to protect the interests of the attorney's clients, and no partner, executor or other responsible party capable of conducting the attorney's affairs is known to exist, this Court, upon proper proof of the fact, shall appoint an attorney as trustee to inventory the files of the inactive, disappeared, deceased, suspended, or disbarred attorney and to take such action as seems indicated to protect the interests of that attorney's clients.

ment of a trustee. When appointment of a trustee is warranted under RSCSH Rule 2.20, section (a) requires the Disciplinary Counsel to move this court for the appointment of an attorney to serve as trustee. Trustees appointed pursuant to RSCSH Rule 2.20 receive no compensation for their services, but they may be reimbursed for travel and other expenses incidental to the performance of their duties. *See* RSCSH Rule 2.20(a).

RSCSH Rule 2.20(b)[5] provides that a trustee shall not disclose any information contained in any inventoried files without the consent of the client to whom the file relates except as necessary to carry out this court's order appointing the trustee and to cooperate in investigations by the Disciplinary Counsel or by the Lawyer's Fund for Client Protection.

At first glance, the last phrase of RSCSH Rule 2.20(a) (*i.e.,* "to take such action as seems indicated to protect the interests of that attorney's clients") may appear to grant plenary authority upon the trustee. However, such a reading confuses the purpose of the trustee's appointment, as set forth in subsection (a), with the powers and duties that flow from that appointment. In the latter regard, RSCSH Rule 2.20(c) enumerates specific powers and duties that confine and limit the scope of an RSCSH Rule 2.20 trustee's authority. Section (c) provides:

**(c) Duties of trustees.**

(1) A trustee appointed under this rule shall:

(i) take custody of all client files and records of the attorney;

(ii) publish one (1) advertisement in a newspaper of general circulation announcing that the trustee has been appointed to inventory the attorney's client files, that the attorney's clients may contact the trustee to retrieve their files within the time specified in the advertisement, and that unclaimed items will be destroyed;

(iii) send form notices by regular mail to all of the attorney's clients, informing them of the attorney's status and that those clients may obtain their files by contacting the trustee at an address and telephone number specified in the notices; and

(iv) obtain and maintain written records and verification of all files released to the attorney's clients.

(2) A trustee appointed under this rule may:

(i) employ locksmiths to open the attorney's present and former law offices, as well as open any safes, cabinets, closets, or other secured areas located within the attorney's present and former law offices and any other areas under the attorney's control (if necessary in the discretion of the trustee);

(ii) take possession of any trust and other bank accounts found or known to exist, determine amounts therein and amounts due the clients for whom the accounts are held, and seek orders from this court for disbursement of amounts due to the clients;

(iii) if the trustee is designated by the trustees of the Fund to act on behalf of the trustees for the Fund, cause subpoenas to be issued pursuant to Rule 10.6 and authorize his or her staff to have access to the attorney's business and banking records to consult with and advise the Fund Trustees concerning the validity and propriety of claims brought by the attorney's clients against the Fund;

(iv) employ accountants and bookkeepers as necessary to determine the source and ownership of funds recovered by the trustee;

(v) upon approval by the Disciplinary Board, place any unclaimed files in storage (in the custody of the Disciplinary Board); or

(vi) take such further action as this court directs.

The powers and duties conferred upon a trustee by RSCSH Rule 2.20(c)(1) are specific in nature and narrow in scope. Rule 2.20(c)(2) confers limited discretionary powers and duties upon a trustee, all of which relate to the specific duties, enumerated in

---

5. RSCSH Rule 2.20(b) provides:

A trustee shall not be permitted to disclose any information contained in any files so inventoried without the consent of the client to whom such file relates, except as necessary to carry out this Court's order appointing the attorney to make such inventory and cooperate in investigations by Counsel or the Lawyers' Fund for Client Protection (Fund).

section (c)(1), to take possession of clients' files and property, to notify the clients for whom the files were kept, and to transfer the clients' files and property to the clients.

■ RSCSH Rule 2.20 neither expressly authorizes nor empowers a trustee to represent the clients of the attorney whose incapacity, disability, suspension, disbarment, disappearance, or death has necessitated the RSCSH Rule 2.20 trusteeship in the first place. Thus, in the absence of an express order of this court, see RSCSH 2.20(c)(2)(vi), the trustee may not and must not act as attorney for the clients.

■ The restrictions upon a trustee's representation of the attorney's clients are rooted in the nature of the attorney-client relationship and its defining characteristics: mutual consent, trust, and loyalty.

■ Except when economic necessity,[6] lack of legal capacity,[7] or some legitimate governmental interest[8] require otherwise, it is inappropriate for courts to impose counsel upon individuals.

> An attorney-client relationship is contractual and consensual, and such a relationship can be formed only with the consent of the attorney and the individual seeking representation.... The consent of the parties must be personal and must flow between the particular individuals[.]

*In re Johore Investment Company (U.S.A.), Inc.,* 157 B.R. 671, 676 (D.Haw.1985) (citations omitted). Even in circumstances where economic necessity and the sixth amendment to the United States Constitution would otherwise require the state to provide counsel, the party for whom counsel is appointed is usually free to reject the appointment and to represent himself or herself. *See, e.g., State v. Hutch,* 75 Haw. 307, 318–19, 321–22, 861 P.2d 11, 18–19 (1993); *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). *But see Martinez v. Court of Appeal of California,* —— U.S. ——, 120 S.Ct. 684,

145 L.Ed.2d 597 (2000) (no right of self-representation on direct appeal from criminal conviction under United States Constitution).

■ Our limitation upon a trustee's authority to act on behalf of another attorney's client preserves both the client's right to seek mutually acceptable and loyal legal counsel and the trusteeship process from the taint or the appearance of taint of attorney self-dealing. The purpose—in the first instance—of the RSCSH Rule 2.20 trusteeship is to provide the client with his or her files and property so that the client can take the steps necessary to protect his or her own interests. The RSCSH Rule 2.20 trusteeship is *not* intended, and must not become or appear to become, a resource from which new clients are mined. Allowing a trustee to be employed by the clients of the inactive, disappeared, deceased, suspended, or disbarred attorney with respect to whom the trustee was selected would undermine the integrity of this court's process of regulating the practice of law by creating an appearance that the trustee is self-dealing and self-serving—in other words, an appearance that the attorney-trustee is exploiting the trusteeship for personal gain. In this respect, we emphasize that accepting the responsibilities of an RSCSH Rule 2.20 trusteeship is an altruistic act, that is, a service both to the bar and to the court, as each attempts to maintain and promote the integrity of the legal profession.

■ In sum, attorneys who are appointed as trustees, pursuant to RSCSH Rule 2.20, are empowered to inventory the clients' files of the inactive, disappeared, deceased, suspended, or disbarred attorney and to return those files to the clients of the attorney. The trustee may exercise only the powers and duties manifestly conferred by RSCSH Rule 2.20 or orders of this court, including those powers reasonably necessary to carry out the trustee's specifically enumerated powers. RSCSH Rule 2.20 does not autho-

---

6. *See, e.g.,* HRS §§ 802–5 and 587–34 (1993) (providing for indigent representation).

7. *See, e.g.,* HRS § 587–34(a) and (c) (1993) (authorizing appointment of counsel for children when perceived interests of a child and the child's guardian *ad litem* differ); HRS § 334–126(e) (1993) (authorizing appointment of coun-

sel for subjects of involuntary outpatient treatment petitions); HRS § 346–234(a)(1993) (authorizing appointment of counsel for subjects of adult protective proceedings).

8. *See, e.g.,* HRS §§ 26–7 and 28–1 (1993) (providing that the Attorney General represents government officers, employees, and the State).

rize the attorney-trustee to intervene in the legal affairs of clients of the inactive, disappeared, deceased, suspended, or disbarred attorney. Thus, we hold that an RSCSH Rule 2.20 trustee is without authority to sign settlement documents on behalf of such an attorney [9] or otherwise to act on behalf of the clients of that attorney.

structions, enjoined the circuit court from entering any order that would require the trustee to act contrary to his authority, and prohibited the circuit court from enforcing any such order previously entered.

## III. CONCLUSION

In light of the concerns noted above, we have granted the trustee's request for in-

---

**9.** Further, as an Assistant Disciplinary Counsel, the trustee was prohibited from engaging in the private practice of law. *See* RSCSH Rule 2.6(a), *supra* note 2.